STATE OF NEBRASKA, APPELLEE, v. LOREN ROBERT GARST, APPELLANT.

123 N. W. 2d 638

Filed October 11, 1963. No. 35426.

Thomas J. Gorham, for appellant.

Ralph D. Nelson and Jerry L. Snyder, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The appellant, Loren Robert Garst, hereinafter called the defendant, was charged with unlawfully operating a motor vehicle within the corporate limits of the city of Lincoln while his Nebraska operator's license was under suspension and before it was reinstated. As presented to the jury by the trial court's instructions, the basic issues were whether or not the defendant was operating a motor vehicle within the corporate limits of the city of Lincoln, and whether or not the operator's license of defendant to drive a motor vehicle was under suspension at the time of said operation. The trial court also submitted to the jury the issue as to whether or not the defendant was given proper notice of the suspension of his Nebraska operator's license. The jury returned a verdict of guilty. The defendant filed a motion for new trial. The trial court overruled the defendant's motion

for new trial and the defendant brings this case to this court for review.

The defendant contends that the trial court erred in overruling the defendant's motion at the close of the evidence by the State and at the close of all of the evidence, for the reason that sufficient notice of suspension of the defendant's license to operate a motor vehicle in this state was not given to the defendant as provided for by law under section 39-7,130, R. R. S. 1943.

William Edwards testified that he was employed by the State of Nebraska, Department of Motor Vehicles; that he was the chief examiner of driver's licenses and supervisor of the office of financial responsibility and had under his control records of individuals who have had their Nebraska operator's licenses previously suspended.

Abstracts of court records involving defendant were received in evidence and show violations of the law relating to the operation of motor vehicles. There also appears in the record a letter from the Department of Motor Vehicles, dated December 6, 1960, addressed to the defendant at 901 West Seventh Street, Grand Island, Nebraska, wherein the defendant was notified that his operator's license and privilege to operate a motor vehicle in this state had been revoked by the Director of Motor Vehicles for a period of 1 year from December 6, 1960, because the defendant had accumulated a total of 12 or more points within a 2-year period. The letter set forth the violation date of each offense, the conviction date, the number of points accumulated by the defendant, and made a demand for the return of the defendant's Nebraska operator's license immediately to the Director of Motor Vehicles at the State House, Lincoln, Nebraska.

An order was entered revoking the defendant's license to operate a motor vehicle for a period of 1 year from December 6, 1960.

The letter was returned to the State of Nebraska,

Department of Motor Vehicles, at the State Capitol Building, unclaimed.

The defendant's Nebraska license to operate a motor vehicle, dated September 21, 1959, appears in the record.

A police officer testified that he made contact with the defendant on December 5, 1961, with reference to an injury accident on Vine Street between El Avado Avenue and Mahoney Drive, at approximately 11:29 p.m. This officer observed a 1962 Ford Thunderbird automobile sitting next to the north curb of Vine Street, and a man standing on the sidewalk facing south. A power pole was broken off and a mailbox bent over. The right front of this automobile was caved in. The person standing near it was the defendant who showed this officer an Arizona driver's license. The defendant stated that he was the driver of the automobile involved in the accident; that he was going at a speed of 35 to 40 miles an hour, traveling west on Vine Street; that there were no other occupants of the automobile and no other vehicle involved in the accident; and that he hit a power pole and a mailbox. The defendant was asked whether or not he had a Nebraska operator's license and he said no, that he was working as a salesman and had only an Arizona operator's license. The defendant was then asked if his operator's license was suspended. The defendant stated that he did not know whether or not it was suspended.

A police officer who was with the officer who testified as above corroborated his testimony.

The defendant testified that at the time he was given a ticket for the violation referred to in an exhibit and which occurred in Grand Island, the date of the violation being November 25, 1960, and the date of hearing November 26, 1960, in police court, he did not give any name or address. The address appearing on this abstract for conviction report is 901 West Seventh Street, Grand Island, Nebraska. The defendant further testified that he did not receive a letter from the Department of Motor

Vehicles relating to his operator's license in Nebraska and the revocation of it. The defendant further testified that his mother was living in Grand Island and he was in Phoenix, Arizona, and that she wrote him a letter and informed him that she had received a letter from some office in the state that she believed related to his operator's license. Defendant sent his mother a letter and enclosed his operator's license, but did not know what his mother did with it. This operator's license was identified by William Edwards, chief examiner of driver's licenses of the Department of Motor Vehicles, and was on file in his office at the time the instant offense was committed. The defendant further testified that he was aware of the points he had accumulated in Nebraska for violation of traffic laws; and that he had made inquiry in 1961 to the financial responsibility section of the Department of Motor Vehicles as to the points he had accumulated.

There is no question but that the defendant had accumulated sufficient points to require a suspension or revocation of his operator's license as provided for in section 39-7,128, R. R. S. 1943. See Bradford v. Ress, 167 Neb. 338, 93 N. W. 2d 17.

Section 39-7,129, R. R. S. 1943, provides in part: "* * * whenever it shall come to the attention of the director that such person or any other person has, as disclosed by the records of such director, accumulated a total of twelve or more points within any period of two years, as set out in section 39-7,128, the director shall summarily revoke (1) the license and privilege of such person to operate a motor vehicle in this state * * *. Such revocation shall be for a period of one year from the date of the signing of the order of revocation * * *."

Section 39-7,130, R. R. S. 1943, provides in part: "Within twenty-four hours after the revocation provided for by section 39-7,129, the Director of the Department of Motor Vehicles shall notify in writing the person whose license or privilege has been revoked that such license

or privilege has been revoked. Such notice shall \* \* \* (4) be served by mailing it to such person by either registered or certified mail to the last-known residence of such person \* \* \*."

The record discloses that the notice of revocation of such license to operate a motor vehicle was mailed by certified mail to the defendant's last-known residence as shown by such records in the Department of Motor Vehicles. The last-known residence of the defendant was established by the address given on the certified copy of the abstract for conviction report received by the department as heretofore identified, which was dated less than 2 weeks prior to the entry of the order of suspension and the mailing of the notice.

This court has held that a person's right to operate a motor vehicle is not in fact a right, but a privilege, and that the Legislature may provide the manner in which this driving privilege be granted and the manner in which it may be revoked. It is apparent that the Legislature made no requirement that notice of revocation or suspension of a license to operate a motor vehicle in this state be actually received by the individual or that such individual have actual knowledge of the suspension or revocation of his operator's license. This is apparent from a reading of section 39-7,130, R. R. S. 1943.

The record shows that the defendant in this case did have actual knowledge of the State's action in regard to his operator's license. He was notified by his mother that she received a letter from the Department of Roads or some state office relating to the operator's license of defendant. As a result of discovering this matter, the defendant relinquished his operator's license, and it was in the files of the director of financial responsibility of the Department of Motor Vehicles at the time the offense charged in the instant complaint was committed.

A reading of the aforesaid sections discloses that the Legislature placed a mandatory duty upon the Director

of the Department of Motor Vehicles to keep the record of convictions of traffic violations and to suspend the privilege of an individual who had accumulated a certain number of points, as set forth in the statute, and directed that the notice of suspension be mailed to the last-known residence of the individual. It would appear that the Legislature intended that the Director of the Department of Motor Vehicles could and should rely upon the last-known residence of such person as shown by the files in his office. To interpret section 39-7,130, R. R. S. 1943, otherwise would place a duty upon the director which would be uncertain in nature and almost impossible to perform.

As the record discloses, it is apparent that all of the requirements of section 39-7,130, R. R. S. 1943, with reference to mailing notice relating to suspension or revocation of operator's licenses, were complied with. The judgment of the trial court should be, and is hereby, affirmed.

AFFIRMED.