STATE v. R. J. FOSTER AND JAMES RONALD BYRD
No. 68SC172

(Filed 14 August 1968)

**1. Indictment and Warrant § 11—    identification of victim — variance**

Where the bills of indictment in a prosecution for felonious breaking and entering and larceny refer to the victim as "G. L. Harris Jewelry Company, a corporation" and the evidence discloses that the correct title of the victim is "G. L. Harris Company, Inc., Siler City" and that there is only one jewelry company by that name located in the county, there is not a sufficient variance to warrant quashal of the indictment.

**2. Criminal Law § 102—   argument of the solicitor**

> In a prosecution for felonious breaking and entering and larceny, statements of the solicitor in his argument to the jury that the defendants were professional crooks and that it was his duty as solicitor to protect the people from professional hoods *are held* prejudicial.

APPEAL from *Carr, J.,* Regular November 1967 Session, CHATHAM County Superior Court.

Each defendant was charged in separate bills of indictment containing two counts. The first count charged each defendant on 28 May 1967 with the crime of felonious breaking and entering a certain building occupied by one G. L. Harris Jewelry Company, a corporation, with intent to steal merchandise and valuable securities of the said G. L. Harris Jewelry Company, a corporation. The second count charged each defendant on 28 May 1967 with larceny of goods and chattels of G. L. Harris Jewelry Company, a corporation, with a value of $1,853.85. The items were described by stock number and other description, namely: "a diamond ring, Stock No. 1-771 ANHH, a ruby birthstone ring, Stock No. 11 ELHH, a Keepsake diamond ring, Stock No. 1-764 AGIA, a Keepsake diamond ring, Stock No. A14862/300, and other rings of the value of Eighteen Hundred Fifty-three and 85/100 —— Dollars * * *."

To the charges each defendant entered a plea of not guilty and the jury returned a verdict as to each defendant, "(g)uilty as charged, both counts." The trial court entered judgment that the defendant Foster be confined in the State's prison seven to ten years and the defendant Byrd be confined five to ten years. Each defendant gave notice of appeal, but on failure to perfect the appeal within the time allotted, the solicitor moved to dismiss the appeal and Judge Bailey entered an order 6 May 1968 dismissing the appeal.

This Court allowed petition for writ of certiorari 16 May 1968, and pursuant thereto, the record was filed in this Court 21 May 1968, and arguments were heard the week of 18 June 1968.

The defendants filed a joint brief in this Court and assigned various errors in the trial court.

*T. W. Bruton, Attorney General, Harrison Lewis, Deputy Attorney General, and James E. Magner, Staff Attorney for the State.*

*Dark and Edwards, attorneys for defendant Foster, appellant.*

*John Randolph Ingram, attorney for defendant Byrd, appellant.*

CAMPBELL, J.

[1]    The defendants assign as error the denial of their motion to quash the bills of indictment because of variance between the allegation in the indictment and the proof as to the name of the victim. The bills of indictment referred to the victim as "G. L. Harris Jewelry Company, a corporation." The evidence disclosed that the correct title of the victim is "G. L. Harris Company, Inc., Siler City." The evidence further disclosed that there is only one jewelry company by that name located in Chatham County. We hold that there was not a sufficient variance between the name of the victim in the bills of indictment and the correct name as revealed by the evidence. This exception is overruled.

"The fact that the property was stolen from T. A. Turner & Co., Inc. rather than from T. A. Turner Co., a corporation, as charged in the bill of indictment, is not a fatal variance." *State v. Davis*, 253 N.C. 224, 116 S.E. 2d 381. Likewise, in *State v. Wyatt*, 254 N.C. 220, 118 S.E. 2d 420, the indictment for embezzlement alleged ownership in the "Pestroy Exterminating Co." The bill of particulars laid the ownership in "Pestroy Exterminators, Inc." and the witnesses in their testimony referred to both of these names and interchangeably, "Pestroy Exterminating Corporation." The court held that there was no fatal variance and stated: "It is apparent that all the witnesses were talking about the same thing." In the instant case, it is apparent from the record that in respect to the ownership of the stolen jewelry and the building from which the jewelry was taken, all of the witnesses were referring to the same corporation.

The argument of the solicitor on behalf of the State was taken down and transcribed by the court reporter and is in the record before us. The defendants took exception to certain parts of the solicitor's argument.

The following is revealed during the solicitor's argument to the jury:

"What were these two men doing in Siler City that night? It's always amused me, gentlemen, that there are professional people around here that just love to come to Chatham County, and I can see them right now, in their own minds, saying 'well, there's a poor little one-horse county.'

MR. INGRAM AND MR. EDWARDS OBJECT, 'TO WHAT SOMEBODY ELSE SAYS ABOUT COMING TO CHATHAM COUNTY. WE'RE TRYING THESE TWO DEFENDANTS HERE, NOT SOMEBODY ELSE.' 'HE SHOULD STICK TO THE EVIDENCE IN THIS CASE.'

COURT. I think the Solicitor is entitled to argue any inference. There is not any evidence that anybody was a professional, but the inferences are.

OBJECTION OVERRULED. EXCEPTION No. 16

MR. COOPER (continuing)

I will be happy to stick to the evidence, gentlemen, the evidence of professional crooks. I argue to you that it is a matter of common knowledge that professional crooks use socks and gloves on their hands so they will not leave fingerprints, so they won't leave fingerprints around. I argue to you that this is evidence that these men were professionals. I argue to you that the fact that they make sure that they go by the police station is evidence of a pofessional *(sic)* bent, a crooked mind, because an amateur will stay as far away from the police station as possible.

What do these men do? They go to the police station and establish an alibi, thinking that everybody is going to say 'a guilty man is not going to the cop shop, that's the last place that they will go.' I argue everything about this case is professional. The coming to a small, rural community, Siler City's not a rural community but a small town, not supposed to have much of a police force, probably only two men. * * *

You're entitled, gentlemen, to consider the evidence in this case and all implications that arise from it. You're entitled to ask yourself who's trying to hide what in this case, who doesn't want you to know the truth about this case? You're entitled to ask yourself 'Is Sheriff Simmons trying to hide something?' 'Does he not want to answer any questions from the witness stand, under oath?' You're entitled to ask yourself 'Is anybody else afraid to answer any questions?'

OBJECTION BY THE DEFENDANTS. EXCEPTION No. 17

COURT. Gentlemen, 'as to anyone else wanting to tell the truth about it,' disregard that argument. Dismiss it from your minds and do not let it affect you in any way in making up your decision in this case. Disregard that. There is not *(sic)* obligation on the defendants to explain anything in this case. And the Court will instruct you later as to what the rights of the defendants are with respect to testifying or not testifying.

MR. COOPER. I would like to explain to the - - -

COURT. Let the Jury go to their room at this time. (The Jury at this time leaves the Courtroom)

MR. COOPER. Your Honor, I wanted to explain to the Court and the Jury that what I had reference to was the obvious fact from comments on my speech from the audience that there was somebody in this Courtroom that knew something about this automobile and I was going to suggest that they ask themselves why those people didn't want to answer any questions, and that's exactly what I had in mind, sir, when I made that statement that there are at least some people in here, and they are entitled to ask themselves if there are other people around here who are afraid to answer questions.

COURT. Well, the difficulty about that argument without explanation is that standing alone, it carries the implication that the defendants had something which they wanted to conceal, and that is the reason that they do not testify, did not testify.

MR. COOPER. If your Honor pleases, I didn't get a chance to develop my argument. I was stopped about that time and I argue to you that there is support for this position. In this last case that Solicitor Taylor commended *(sic)* on somebody in the audience had something to say, or something like that. I think I'm entitled to comment on the fact that there are people sitting here in this audience who know something about this case that obviously do not want to answer questions.

MR. INGRAM. Will, *(sic)* I don't think so, Your Honor, because he has the right and the responsibility to put any witness in the Courtroom on that witness stand - - -

COURT. But that would put the burden on the defendants, if you're contending that there are people other than the defendants in the Courtroom that knew something about it. They could have been called.

(There was further discussion at this time that the recording machine did not pick up that was out of the presence of the Jury)

(At this time the defendant moved the Court to declare a mistrial, and motion was denied.)

EXCEPTION No. 18

The jury returned to the Courtroom at this time. The Solicitor continued:

I apologize for taking up so much time. I do think, however, that this is an important case, and, too, it's important from the defendants' standpoint and certainly it is important from

my standpoint, representing the State of North Carolina. It is my duty to prosecute people that are charged with crime and it's my duty to do my best to see that these law abiding citizens have a right to make a living and go about their business every day without being subjected to having their stuff stolen from them, put out of business because some professional crook from Guilford County wants to come down and take away all of his stock so he can't make a living. That's part of my job, to see that people are able to live in peace, just to put it very bluntly. It is my job to protect the people in the four counties of my district from professional hoods.

MR. EDWARDS. OBJECTION, to 'professional hoods or crooks.'

EXCEPTION No. 19

It is my duty to protect the people from the four counties in my district from any kind of stealing, whether it be professional or amateur. That's the reason I'm paid a salary, to prosecute these cases in the Superior Court of Alamance, Orange, Chatham and Person Counties. That's what I'm trying to do in this case. Gentlemen, you have a duty to the people of your county in this case, as in all cases; you have a duty to point out to these people whether or not the law is going to be enforced in this county. You have the duty to see that if people come into this county and attempt to harm one of your citizens, that that man is punished. If you don't do this, you're not going to have any law."

We are unable to distinguish this argument of the solicitor from the argument of the solicitor in the case of *State v. Miller,* 271 N.C. 646, 157 S.E. 2d 335, wherein Chief Justice Parker stated on page 660:

"Considering the argument of the solicitor as a whole, and particularly that part of his argument which in substance states that the appealing defendants are habitual storebreakers, we are of opinion, and so hold, that to sustain the trial below would be a manifest injustice to the defendants' right to a fair and impartial trial."

For the unfair and prejudicial argument of the solicitor for the State, defendants are entitled to a

New trial.

BRITT and MORRIS, JJ., concur.