STATE OF NORTH CAROLINA v. CHARLES WILLIAM LETTERLOUGH

No. 6919SC157

(Filed 27 August 1969)

**1. Automobiles § 3— driving while license revoked — validity of warrant**

Defendant was tried upon a warrant entitled North Carolina Uniform Traffic Ticket, which charged that defendant "did unlawfully and willfully operate the above-described vehicle on a street or highway . . . [by] . . . (X) Driving while Lic Permanent Revoked — 20-28." *Held:* Although the charge should have been more grammatically and precisely stated, the warrant was sufficient to charge defendant with driving a motor vehicle while his license was permanently revoked in violation of G.S. 20-28.

**2. Indictment and Warrant § 7— requisite of a warrant — Uniform Traffic Ticket**

The use of the Uniform Traffic Ticket as a warrant should not be encouraged, since it lacks that degree of clarity desirable in a warrant which should "express the charge against the defendant in a plain, intelligible, and explicit manner." G.S. 15-153.

**3. Indictment and Warrant § 9— charge of crime — minimum standards**

A warrant meets the minimum standards for validity if it (1) informs the defendant of the charge against him, (2) enables him to prepare his defense, and (3) enables the court to proceed to judgment and thereby bars another prosecution for the same offense.

**4. Indictment and Warrant § 9; Automobiles § 3— charge of crime — use of abbreviations**

While the use of abbreviations in warrants and indictments is not to be encouraged, the use of the word "lic" in a warrant charging the offense of driving a motor vehicle while license was permanently revoked is not fatal, the word "lic" being a recognized abbreviation for the word "license."

**5. Indictment and Warrant § 12— amendment to warrant — discretion of court**

Where amendment to the warrant does not change the offense with which defendant is charged, the trial court has discretionary authority to allow the amendment.

**6. Automobiles § 3— driving while license revoked — admissibility of driving record**

In prosecution charging defendant with driving a motor vehicle while his license was permanently revoked, the copy of defendant's driving record under seal and certification from the Department of Motor Vehicles was properly admitted in evidence G.S. 20-42(b).

**7. Criminal Law §§ 80, 166; Witnesses § 8— exclusion of evidence — affidavit — cross-examination**

Trial court properly refused to admit in evidence an affidavit offered by defendant, where the person who made the affidavit was not available

for cross-examination, the solicitor's cross-examination concerning the affidavit did not touch upon its contents, and the record does not contain the affidavit or reveal its contents.

**8. Criminal Law § 162— exception to exclusion of evidence — appeal**

An exception to the exclusion of evidence will not be considered on appeal when it is not made to appear what the excluded evidence would have been.

**9. Criminal Law § 162— objection to evidence — waiver**

Failure to object in apt time to incompetent testimony will be regarded as a waiver of objection and its admission is not assignable as error unless the evidence is forbidden by statute.

**10. Criminal Law § 162— objection to evidence — motion to strike — waiver**

Defendant waived any right to have alleged prejudicial portion of State witness' answer stricken where record indicated that defendant made no immediate objection to the answer but waited until an additional question had been asked and answered before making a motion to strike and for a mistrial.

**11. Criminal Law § 102— argument to jury — discretion of judge**

The argument of counsel must be left largely to the discretion of the presiding judge who is familiar with all the surrounding circumstances of the trial of the particular case.

**12. Criminal Law § 102; Automobiles § 3— driving while license revoked — solicitor's argument to jury**

In prosecution charging defendant with the offense of driving a motor vehicle while license was permanently revoked, G.S. 20-28, defendant was not prejudiced by solicitor's argument to the jury that "defendant has been driving while license revoked for three or more offenses" and "you are not to believe the defendant with the record he had and turn him aloose," where three or more offenses are in fact required for permanent revocation of license under G.S. 20-19(e), and where competent evidence was presented to show defendant's license had been permanently revoked.

**13. Criminal Law § 102— solicitor's argument to jury**

Trial court did not abuse its discretion in permitting solicitor to argue to the jury that they were not to believe defendant's girl friend that "he is living in sin with," where defendant's witness had testified that defendant "sometimes" lived in the home where she and her mother lived.

**14. Criminal Law § 114— instructions — expression of opinion — introductory remarks**

The fact that trial judge began his charge to his jury by saying that defendant "is brought into this Court by means of a warrant and comes to this Court by appeal" does not entitle defendant to a new trial, the statement being nothing more than a preliminary statement accurately depicting how the matter got to the superior court from the recorder's court.

APPEAL by defendant from *Crissman, J.,* September 1968 Session of RANDOLPH Superior Court.

Defendant was tried in Randolph County Recorder's Court on a warrant charging him with driving a motor vehicle while his license was permanently revoked in violation of G.S. 20-28. He pleaded not guilty, was found guilty, and from sentence imposed he appealed to the superior court, where he again pleaded not guilty. At the trial in superior court the State presented testimony of two highway patrolmen who testified that at about 12:10 a.m. on 21 August 1966, they saw the defendant driving a black Pontiac automobile on Watkins Street in or near Asheboro, North Carolina. When they were five to ten feet from the defendant, he jumped from the car and ran, disappearing into some woods. He was not located until the following day. Both patrolmen testified that they had known the defendant for some time and that the person they saw driving on the night in question was definitely the defendant. The State introduced in evidence a certified copy of defendant's driving record from the Department of Motor Vehicles, which indicated that the defendant's driver's license had been permanently revoked effective January 1966.

The defendant did not testify but offered the testimony of three witnesses. James Ledwell testified that he had worked for the defendant and that it was he and not the defendant who was driving on the night in question. He admitted that twice before he had sworn he was driving when the defendant was in trouble. Mary Ingram, the defendant's girl friend, and her daughter Katherine Ingram sought to establish an alibi for the defendant by testifying that he was not in Asheboro but was in a motel near Cheraw, South Carolina, on the night in question.

From a verdict of guilty and a sentence of imprisonment the defendant appealed.

*Attorney General Robert Morgan, Assistant Attorney General William W. Melvin, and Staff Attorney T. Buie Costen, for the State.*

*Ottway Burton for defendant appellant.*

PARKER, J.

[1]   The warrant upon which the defendant was tried was entitled *North Carolina Uniform Traffic Ticket.* It charged that on or about 21 August 1966, on RPR-2183 in the vicinity of Asheboro, in Ran-

dolph County, the defendant ". . . did unlawfully and willfully operate the above-described motor vehicle on a street or highway of North Carolina." It continues as follows:

"(Check applicable box.)

1. ( )  By speeding..........M P H in a..........M P H public zone Within city limits ( ) Yes ( ) No

2. ( )  By failing to stop at a duly erected stop sign

3. ( )  By disobeying a duly installed stop signal

4. ( )  By failing to see before (starting) (stopping) (turning from a direct line) that such movement could be made in safety

5. ( )  While under the influence of intoxicating liquor

6. ( )  By failing to yield right-of-way in obedience to a duly erected (yield sign) (stop sign)

7. (X)  Driving while Lic Permanent Revoked — 20-28

&ast;   &ast;   &ast;   &ast;   &ast;

( )  In violation of city ordinance(s) Chap..........Sec.......... In violation of, and contrary to, the form of the statute in such cases made and provided and against the peace and dignity of the State."

Over the objection of the defendant the State was allowed to amend the warrant in superior court by adding, immediately following line No. 7, the words: "While and during the period his driver's license was permanently revoked." The defendant contends that the court erred in denying his motion to quash the warrant and in permitting the amendment.

[1-5]  We have no quarrel with the uniform traffic ticket as a citation form, which is apparently the primary purpose for which it is intended. Its use as a warrant, however, should not be encouraged. This form lacks that degree of clarity desirable in a warrant which should "express the charge against the defendant in a plain, intelligible, and explicit manner." G.S. 15-153. The long list of possible violations could prove confusing to defendants in some instances. The State concedes that the warrant in this case is not the best of legal documents but contends that it is sufficient to withstand defendant's challenge. We agree. While the charge against the defendant as contained in the original warrant should certainly have been more grammatically and precisely stated, we hold that the warrant did meet minimum standards for validity in that it (1) informed the

defendant of the charge against him, (2) enabled him to prepare his defense, and (3) enabled the court to proceed to judgment and thereby barred another prosecution for the same offense. G.S. 15-153; *State v. Smith,* 240 N.C. 99, 81 S.E. 2d 263; *State v. Sumner,* 232 N.C. 386, 61 S.E. 2d 84. While the use of abbreviations in warrants and indictments is not to be encouraged, we note that the word "lic" appears in Webster's Third New International Dictionary, 1968 edition, as a recognized abbreviation for the word "license." Since the amendment to the warrant which was allowed in the superior court did not change the offense with which defendant was charged, the court had discretionary authority to allow the amendment. *State v. Wilson,* 237 N.C. 746, 75 S.E. 2d 924. For other cases in which somewhat similar "form" type warrants have been considered, see: *State v. Blacknell,* 270 N.C. 103, 153 S.E. 2d 789; *State v. Wells,* 259 N.C. 173, 130 S.E. 2d 299; *State v. Tripp,* 236 N.C. 320, 72 S.E. 2d 660; *State v. Daughtry,* 236 N.C. 316, 72 S.E. 2d 658.

**[6-8]**  The defendant contends the court committed error in the admission and exclusion of some of the testimony and exhibits offered. In this connection, we find no error. The copy of defendant's driving record under seal and certification from the Department of Motor Vehicles was properly admitted in evidence. G.S. 20-42(b); *State v. Blacknell, supra; State v. Ball,* 255 N.C. 351, 121 S.E. 2d 604. Defendant excepts to the court's refusal to admit in evidence an affidavit offered by him, but this ruling was clearly correct since the person who made the affidavit was not available for cross-examination. While the solicitor questioned one of defendant's witnesses concerning the date she obtained the affidavit which the defendant had attempted to introduce, his cross-examination did not touch on the contents of the affidavit and did not render this hearsay evidence admissible. Furthermore, the record before us does not contain the affidavit or reveal its contents, and an exception to the exclusion of evidence will not be considered on appeal when it is not made to appear what the excluded evidence would have been. *Heating Co. v. Construction Co.,* 268 N.C. 23, 149 S.E. 2d 625.

**[9, 10]**  Defendant further contends that he was prejudiced by the court's refusal to strike a portion of a State's witness's response to a question by the solicitor concerning the witness's prior contact with the defendant. The witness stated:

> "I stopped a car he was riding in at one time for improper mufflers, and he got out and we talked for quite a while. And, I stopped him on another occasion riding with Mr. Faigler for carrying a concealed weapon."

The record indicates that the defendant made no immediate objection but waited until an additional question had been asked and answered before making a motion to strike and for a mistrial. Failure to object in apt time to incompetent testimony will be regarded as a waiver of objection and its admission is not assignable as error unless the evidence is forbidden by statute. *Eaton v. Klopman Mills, Inc.,* 2 N.C. App. 363, 163 S.E. 2d 17. Any right to have the alleged prejudicial portion of the witness's answer stricken was waived by the defendant's failure to interpose a timely objection. Stansbury, N.C. Evidence 2d, § 27.

[11-13]    Defendant urges as error the court's overruling of his objection to the following comments made by the solicitor during argument to the jury: "This defendant has been driving while license revoked for three or more offenses," and "(y)ou are not to believe the defendant with the record he had and turn him aloose nor are you to believe his girl friend that he is living in sin with." The argument of counsel must be left largely to the discretion of the presiding judge who is familiar with all the surrounding circumstances of the trial of the particular case. *State v. Barefoot,* 241 N.C. 650, 86 S.E. 2d 424.

> "Counsel must be allowed wide latitude in the argument of hotly contested cases. But what is an abuse of this privilege must ordinarily be left to the sound discretion of the trial judge, and we 'will not review his discretion, unless the impropriety of counsel was gross and well calculated to prejudice the jury.'" *State v. Bowen,* 230 N.C. 710, 55 S.E. 2d 466.

In this case three or more offenses are in fact required for permanent revocation of license under G.S. 20-19(e), and competent evidence had been presented to show defendant's license had been permanently revoked. The solicitor's comment concerning the defendant's girl friend was undoubtedly prompted by the testimony of Katherine Ingram that the defendant "sometimes" lived in the home where she and her mother lived. The solicitor's comments here do not, as defendant suggests, compare with those excepted to in *State v. Miller,* 271 N.C. 646, 157 S.E. 2d 335, or *State v. Foster,* 2 N.C. App. 109, 162 S.E. 2d 583, where the solicitor's jury arguments were found to be grossly unfair and prejudicial. In the present case the judge did not abuse his discretion in permitting the arguments complained of by the defendant.

[14]    Defendant's final assignments of error relate to various portions of the charge and in particular to the court's beginning the charge by saying "he is brought into this Court by means of a war-

rant . . . and comes to this Court by appeal." No authority is cited in defendant's brief to support his position that this was error sufficient to warrant a new trial. The statement was nothing more than a preliminary statement accurately depicting how the matter got to the superior court. The defendant is also critical of the court's charge concerning his defense of alibi, but when the charge is considered in its entirety we find no prejudicial error.

Finally, the defendant contends that the court violated G.S. 1-180 by overstressing the State's contentions. A careful review of the entire charge fails to establish any merit in this contention.

In the trial below, we find

No error.

MALLARD, C.J., and BRITT, J., concur.