STATE OF NORTH CAROLINA v. WALTER LEON HUGHES
No. 6927SC71

(Filed 22 October 1969)

**1. Automobiles § 3—   driving while license suspended — elements of the crime**

To constitute a violation of G.S. 20-28(a) there must be (1) operation of a motor vehicle by a person (2) on a public highway (3) while his operator's license is suspended or revoked.

**2. Automobiles § 3—   certified copy of driver's license record — admissibility — form used by Department of Motor Vehicles disapproved**

In a prosecution of defendant for operating a vehicle on a public highway while his license was suspended or revoked, copy of the driver's license record of defendant on file with the Department of Motor Vehicles, certified as a true copy by a proper official of the Department and bearing the seal of the Department, is admissible into evidence. G.S. 20-42(b). Form of driver's license record used by the Department of Motor Vehicles is disapproved as not being sufficiently clear to dispense with the necessity of interpretation.

**3. Automobiles § 2—   re-examination of licensee under G.S. 20-29.1 — suspension of license — notification to licensee**

In any case in which a license is suspended after re-examination of the licensee under the authority of G.S. 20-29.1, the Commissioner of Motor Vehicles is required to notify the licensee of such suspension, although no requirement for notice appears in the statute.

**4. Automobiles § 3—   driving while license suspended — notification of suspension — sufficiency of evidence**

In this prosecution of defendant for operating a motor vehicle on the public streets while his license was revoked or suspended, defendant's motions for nonsuit should have been sustained where there was no competent evidence that any notice of the license suspension had been given to defendant, by ordinary mail or otherwise, on or prior to the date on which he was charged with having committed the offense, a notation in the certified copy of defendant's driving record of the figures "06 26 68" which appear in the column headed "Mail Date of Suspension Mth Day Yr" being insufficient to show such notification.

APPEAL by defendant from *Grist, J.,* 30 September 1968 Criminal Session of GASTON Superior Court.

Defendant was tried in the Gastonia Municipal Court on his plea of not guilty to a warrant charging him with operating a motor vehicle on the public streets of the City of Gastonia on 28 July 1968 while his operator's license was revoked or suspended, in violation of G.S. 20-28. He was found guilty, and from judgment imposing sentence appealed to the Superior Court, where he again pleaded not guilty and was tried *de novo.*

At his trial in Superior Court the only witness for the State was a Gastonia City Policeman who testified in substance as follows: On Sunday afternoon, 28 July 1968, he investigated a collision at the intersection of 74 East and Cox Road in Gastonia, where he saw the defendant, who told him he was operating one of the automobiles. He asked to see defendant's driver's license and defendant did have a valid North Carolina driver's license. He gathered the necessary information and released both parties and saw defendant drive his car away. Later he wrote the Department of Motor Vehicles for a license check and received from the Department a "Driver's License Record Check for Enforcement Agencies," pertaining to the defendant. On 4 September 1968 he swore to the warrant against defendant.

Over objection by defendant, the State was permitted to introduce in evidence as its Exhibit 1 a certified copy of a record of the North Carolina Department of Motor Vehicles which is entitled "Driver's License Record Check for Enforcement Agencies," and which is certified by an official of the Department of Motor Vehicles, designated by the Commissioner of Motor Vehicles as an officer empowered to certify copies of records of the Department in accordance with the provisions of G.S. 20-42, to be a true copy of the driver's license record of the defendant on file with the North Carolina Department of Motor Vehicles. This document contains the following: Within a block entitled "Name and Address" appears "Walter Leon Hughes 313 S Vance St Gastonia, N. C." Within a block entitled "Operator Issue Date Mth Day Yr" appear the figures "11 18 65." Within a block entitled "Operator Expiration Date Mth Day Yr" appear the figures "11 22 69." Within a block entitled "Search Date" appears "Aug. 09, 1968." There are nine columns immediately below these blocks. The first column is entitled "Mail Date of Suspension Mth Day Yr" and contains the figures "06 26 68." The second column is entitled "Effective Date of Suspension Mth Day Yr" and contains the figures "07 01 68." The third column is entitled "Date Eligible for Reinstatement Mth Day Yr" and contains the figures "07 01 69." The fourth column is entitled "Suspension or Revocation" and contains the word "Suspension." The fifth column is entitled "Nature of Record or Reason for Suspension or Revocation" and the first line within the fifth column contains the words "Failed reexamination — G.S. 20-29.1." The second line in the fifth column contains the words "Special Examination." In the sixth column, which is headed "Occurrence Date Mth Day Yr," immediately opposite the words "Special Examination" in the fifth column, appear the figures "06 12 68." The remaining blocks and

columns on the State's exhibit are not relevant to questions presented on this appeal.

At the close of the State's evidence the defendant moved for judgment of nonsuit, which motion was overruled. The defendant then testified in substance as follows: He had been involved in an accident in Gastonia on 28 July 1968, on which date he had a valid North Carolina driver's license with expiration date on his license of 22 November 1968. He showed the license to the investigating officer. A little over a year previously he had moved from 313 S. Vance Street to 828 S. Jackson Street and he had had difficulty getting his mail if sent to his former address. He had received a letter dated 4 June 1968 from the North Carolina Department of Motor Vehicles at his address at 828 S. Jackson Street in Gastonia. In response to this letter he did go on 12 June 1968 to the driver's license examination office in Gastonia for a reexamination and was given a test. The examiner told him that he had failed the examination, but gave him his license back, and he left with his driver's license in his pocket. He was later given another examination on 30 August 1968, at which time he still had his driver's license with him. After the examination on 30 August 1968 the examiner kept his license and gave him a receipt for it and told him he was not to drive until his license had been approved. About twelve or thirteen days later he received his driver's license back from Raleigh and had it with him at the trial. Prior to 30 August 1968 he had never received notice from Raleigh or any other source that his license was suspended.

The jury returned a verdict of guilty, and from judgment thereon sentencing defendant for a term of six months, suspended for a period of two years, and imposing a fine of $200.00 and costs, defendant appealed, assigning errors.

*Attorney General Robert Morgan, Assistant Attorney General William W. Melvin, and Staff Attorney T. Buie Costen for the State.*

*Frank P. Cooke and Jeffrey M. Guller for defendant appellant.*

PARKER, J.

[1] Defendant appeals from judgment imposed on his conviction of violating G.S. 20-28(a) and assigns as error the overruling of his motions for nonsuit made at the close of the State's evidence and renewed at the close of all the evidence. G.S. 20-28(a) in pertinent part provides:

"Any person whose operator's or chauffeur's license has been suspended or revoked other than permanently, as provided in

this chapter, who shall drive any motor vehicle upon the high-
ways of the State while such license is suspended or revoked
shall be guilty of a misdemeanor; . . ."

Interpreting this statute, our North Carolina Supreme Court has
stated that "(t)o constitute a violation of G.S. 20-28(a) there must
be (1) operation of a motor vehicle by a person (2) on a public high-
way (3) while his operator's license is suspended or revoked." *State
v. Cook,* 272 N.C. 728, 731, 158 S.E. 2d 820, 822. In the present
case there is no question as to the first two elements; appellant ad-
mits that on 28 July 1968, the date charged in the warrant, he drove
his automobile on a public highway. Defendant challenges the suffi-
ciency of the State's evidence to establish the third element, that on
the date in question his operator's license was suspended.

**[2]**    All of the evidence is to the effect that on 28 July 1968 de-
fendant had in his possession a valid North Carolina driver's li-
cense which was not expired. The only evidence offered by the
State to establish that defendant's license was suspended on that
date was the State's Exhibit 1. This was a copy, certified by an
authorized official of the North Carolina Department of Motor Ve-
hicles to be a true copy, of the driver's license record of defendant
on file with the North Carolina Department of Motor Vehicles.
[The copy of this exhibit filed with the record on appeal does not
indicate whether it was under the seal of the Department of Motor
Vehicles. If it was, then by virtue of G.S. 20-42(b) it was "admissible
in any proceeding in any court in like manner as the original thereof,
without further certification." Appellant has raised no question as
to its being under seal and has conceded it was admissible.] Exactly
what this exhibit establishes is, however, not altogether clear. It re-
quires considerable interpretation to establish anything. The North
Carolina Supreme Court, in an opinion by Winborne, C.J., in the
case of *State v. Moore,* 247 N.C. 368, 101 S.E. 2d 26, had the follow-
ing to say concerning a somewhat similar exhibit which had been in-
troduced in evidence in that case:

> "The language of the Exhibit is susceptible of the inference
> that it is a certified copy of the record of the North Carolina
> Department of Motor Vehicles Highway Patrol, signed by a
> proper official and bearing the seal of the Department, which is
> 'admissible in any proceeding in any court in like manner as the
> original thereof, without further certification.'

> "(Nevertheless, note is taken of the figures in the record, for
> instance figures 1, 2 and 3 each appearing 4 times on the left
> margin presumably relating to first, second and third revoca-

tions, and other figures separated by dashes, such as '11-10-49' presumably indicating date of 'November 10, 1949.' *This practice in judicial records ought not to be followed, and it is not approved. A form sufficiently clear to dispense with necessity of interpretation should be adopted by the Department.)*" (Emphasis added.)

Examination of the State's Exhibit 1 in the present case would indicate that the North Carolina Department of Motor Vehicles has not yet heeded the admonition of the Supreme Court that it should adopt a "form sufficiently clear to dispense with necessity of interpretation."

[3] Giving the State's Exhibit 1 in the present case the benefit of a liberal interpretation, it is susceptible of the inference that the records in the North Carolina Department of Motor Vehicles indicate that defendant's driver's license had been suspended effective 1 July 1968, that the license would become eligible for reinstatement on 1 July 1969, and that the reason for the suspension was that defendant had failed a re-examination given him on 12 June 1968 pursuant to G.S. 20-29.1. The question remains as to whether the exhibit will support an inference that the license had been suspended *as provided in Chapter 20 of the General Statutes,* which is required before a conviction under G.S. 20-28(a) may be sustained.

G.S. 20-29.1 in pertinent part provides:

"The Commissioner of Motor Vehicles, having good and sufficient cause to believe that a licensed operator or chauffeur is incompetent or otherwise not qualified to be licensed, may, upon written notice of at least five days to such licensee, require him to submit to a re-examination to determine his competency to operate a motor vehicle. Upon the conclusion of such examination, the Commissioner shall take such action as may be appropriate, and may suspend or revoke the license of such person or permit him to retain such license, or may issue a license subject to restrictions. . . ."

This section does not expressly require the Commissioner of Motor Vehicles, prior to suspending a license under its provisions, to give notice of such suspension to the operator. Such a requirement for notice is made by G.S. 20-16(d) in all cases in which a license is suspended under the authority of that section. Even though a similar requirement for notice does not appear in G.S. 20-29.1, a reading of Chapter 20 of the General Statutes, in which both sections appear, makes it clear that the Legislature intended that notice be given to the licensee when the Commissioner suspends a license under G.S.

20-29.1 as well as when suspension is made under the authority of
G.S. 20-16. For instance, G.S. 20-20 provides that whenever any ve-
hicle operator's license is suspended under the terms of Chapter 20,
"the licensee shall surrender to the Department all vehicle opera-
tor's licenses and duplicates thereof issued to him by the Depart-
ment which are in his possession." It is difficult to see how the li-
censee could be called upon to surrender his license because it had
been suspended unless he is given notice of the suspension. Further,
G.S. 20-25 provides that any person whose license has been sus-
pended shall have a right to file a petition within 30 days thereafter
for a hearing on the matter in the superior court. Again, the right
to court review of the Department's action in suspending a license
would be futile if the licensee received no notification that the li-
cense had been suspended. Therefore we think it clear, and so hold,
that in any case in which a license is suspended under the authority
of G.S. 20-29.1, the Commissioner of Motor Vehicles is required to
notify the licensee of such suspension. That such notice is required
is made more apparent when it is realized that even a failure to
pass a re-examination conducted under G.S. 20-29.1 does not neces-
sarily result in suspension of the license; the Commissioner may
permit the person to retain his license and take such other "action
as may be appropriate." In the present case the examiner on 12
June 1968 permitted the defendant to retain his license even after
informing him he had failed the examination.

G.S. 20-48 provides:

"Whenever the Department is authorized or required to give
any notice under this chapter or other law regulating the opera-
tion of vehicles, unless a different method of giving such notice
is otherwise expressly prescribed, such notice shall be given
either by personal delivery thereof to the person to be so noti-
fied or by deposit in the United States mail of such notice in
an envelope with postage prepaid, addressed to such person at
his address as shown by the records of the Department. The
giving of notice by mail is complete upon the expiration of four
days after such deposit of such notice. Proof of the giving of
notice in either such manner may be made by the certificate
of any officer or employee of the Department or affidavit of any
person over twenty-one years of age, naming the person to
whom such notice was given and specifying the time, place, and
manner of the giving thereof."

The North Carolina Supreme Court in *Carson v. Godwin*, 269
N.C. 744, 153 S.E. 2d 473, expressed dissatisfaction with the use of

ordinary mail as a means of notification of Departmental actions with reference to driver's licenses. In that case, the Court said:

> "An open letter to a former address may or may not be delivered, especially if there is a change of address. If the mails are to be employed for the transmission of notice, it would seem that a registered letter or a return receipt showing delivery would be a more complete compliance with the requirements of notice — *essential of due process.*" (Emphasis added.)

Our Supreme Court in *Carson v. Godwin, supra,* made no reference to G.S. 20-48 and did not rule definitively whether, in view of that statute, notification by ordinary mail would be considered as an acceptable, even if minimal, compliance with the requirements of due process. Nor do we find it necessary to make such a determination in the case now before us. Moreover, in the present case we do not find it necessary to decide, and we do not decide, the question argued in the briefs of the parties as to whether in a prosecution for violation of G.S. 20-28(a) the State must in any event prove that defendant, at the time he drove a motor vehicle on the public highways of the State, had actual knowledge that his license had been suspended. [For decisions of courts of other states interpreting their statutes making it a criminal offense to drive after license is revoked or suspended and holding that actual knowledge of revocation or suspension is not required to sustain a conviction where proper notice by mail has been given, see: *State v. Baltromitis,* 5 Conn. Cir. 72, 242 A. 2d 99 (certified mail); *State v. Garst,* 175 Neb. 731, 123 N.W. 2d 638 (registered or certified mail); *State v. Wenof,* 102 N.J. Super. 370, 246 A. 2d 59 (ordinary mail); *State v. Johnson,* (Supreme Ct. of N.D.), 139 N.W. 2d 157 (opinion does not specify whether ordinary, certified or registered mail); *State v. Hebert,* 124 Vt. 377, 205 A. 2d 816 (certified mail).]

**[4]**    Even if it be conceded *arguendo* that proof of actual knowledge is not required and that constructive notice by ordinary mail is sufficient, there was in the present case no competent evidence that any notice of the license suspension had been given to defendant, by ordinary mail or otherwise, on or prior to the date on which he was charged with having committed the offense. The only evidence which even remotely bears on this question was the notation in the State's Exhibit 1 of the figures "06 26 68" which appear in the column headed "Mail Date of Suspension Mth Day Yr." It would require far too many inferences drawn from other inferences to conclude from this evidence that notice had been given to the defendant "by deposit in the United States mail of such notice in an envelope with

postage prepaid, addressed to such person (defendant) at his address as shown by the records of the Department." G.S. 20-48.

Defendant has been charged with a criminal offense, punishment for which is a mandatory fine of $200.00 and a possible prison sentence in the discretion of the court for as long as two years. Conviction also rejuires a further suspension of his driver's license for an additional year. G.S. 20-28(a). Our Legislature went a long way just for the purpose of easing administrative burdens of the Department of Motor Vehicles when, in G.S. 20-48, it authorized notification by ordinary mail. It would be harsh enough to hold, as courts of other states have held in the cases cited *supra*, that the defendant might lawfully be found guilty of driving while his license was suspended in the absence of evidence that at the time he is alleged to have committed the offense he had actual knowledge that his license was suspended. To hold in addition that a conviction might be sustained in the absence of competent evidence of adequate constructive notice would be unconscionable. There was no such competent evidence in this case, and defendant's motions for nonsuit should have been sustained.

The judgment appealed from is

Reversed.

Mallard, C.J., and Britt, J., concur.