STATE OF NORTH CAROLINA v. ROBERT LEE TEASLEY

No. 709SC475

(Filed 21 October 1970)

1. Indictment and Warrant § 7— order of arrest — reference to affidavit or complaint

When the order of arrest refers to an attached affidavit or complaint, the affidavit or complaint becomes a part of the warrant of arrest. G.S. 15-20.

2. Indictment and Warrant § 15— issuance of warrant — waiver of defects — motion to quash

Where the record shows that the defendant appeared at the trial in the superior court, engaged in the selection of a jury, entered a plea of not guilty, and cross-examined the State's witness, the defendant waived any defect incident to the authority of the person issuing the warrant for his arrest; and the defendant's motion to quash made after the State had rested its case was addressed to the discretion of the trial judge.

3. Indictment and Warrant § 9— quashal of warrant — mere informalities

A warrant and the affidavit upon which it is based are tested by rules less strict than those applicable to indictments; a warrant should not be quashed or the judgment arrested for mere informalities or absence of refinements.

4. Indictment and Warrant § 9— sufficiency of warrant

A warrant of arrest is sufficient if it clearly gives the defendant notice of the charge against him, so that he may prepare his defense, and if it enables him to plead former acquittal or former conviction should he again be brought to trial for the same offense, it must also enable the court to pronounce judgment in case of conviction.

5. Indictment and Warrant § 7; Automobiles §§ 3, 117— use of Uniform Traffic Ticket — charge of crime

Although the Court of Appeals disapproves the use of the Uniform Traffic Ticket as a warrant of arrest, the Uniform Traffic Ticket in this case sufficiently charged the offenses of speeding 90 mph in a 55 mph zone and of driving while license suspended.

6. Automobiles § 3— notice of suspension of license — validity of certification

Certification by Motor Vehicles employee that the original notice of suspension of defendant's driver's license was addressed to the defendant and placed in the U. S. mail *held* sufficient to comply with the statutes setting forth the procedure for the giving of notice; language on the certificates which purported to show that they were sworn to and subscribed before a notary public is surplusage and does not vitiate their effect. G.S. 8-35, G.S. 20-48.

State v. Teasley

7. **Automobiles § 3— suspension of license — validity of notice**

Where the Department of Motor Vehicles complied with the applicable statutes in giving defendant notice that his driver's license was suspended, such compliance constituted constructive notice to defendant that his license had been suspended; the fact that the defendant moved after the date of the notice and informed the Department of his new address did not vitiate the notice, which the Department had mailed to defendant's address as shown by its records on the date of the notice. G.S. 20-16(d), G.S. 20-23, G.S. 20-48.

8. **Evidence § 4— mailing of letter presumption of receipt**

There is a presumption that mail, with postage prepaid and correctly addressed, will be received.

9. **Automobiles § 3— notice of license suspension — statutory procedure**

The statute providing for the manner in which notice of suspension of driver's license is to be given is reasonably calculated to assure that notice will reach the intended party and afford him the opportunity of resisting or avoiding the proposed suspension.

10. **Automobiles §§ 3, 117— prosecutions — admission of driving status record**

In a prosecution charging defendant with speeding 90 mph in a 55 mph zone and with driving while his license was suspended, the admission in evidence of defendant's driving status record was not erroneous on the ground that it showed the revocation of his license for speeding over 76 mph, where defendant did not request that the record be limited in any way.

11. **Automobiles § 3— defendant's driving status — admissibility of records**

The records of the Department of Motor Vehicles, properly authenticated, are competent for the purpose of establishing the status of a person's operator's license and driving privilege.

APPEAL by defendant from *Copeland, S.J.*, Special March 1970 Session of Superior Court held in FRANKLIN County.

The defendant was tried upon "North Carolina Uniform Traffic Ticket No. 819725." The defendant's name and the date of the violation, "Aug. 16, 1968," appear in the first part of this instrument. Other pertinent parts thereof are as follows:

"In the Recorder's Court, Louisburg, N.C. The affiant, being duly sworn, says that the above-named defendant, on or about the above-stated violation date in the above-named county, did unlawfully and willfully operate the above-described motor vehicle on a street or highway:

1 X. By speeding 90 MPH in a 55 MPH Zone Within city limits ( ) Yes (X) No

2 X. Driving while his license were suspended.

In violation of, and contrary to, the form of the statute in such cases made and provided and against the peace and dignity of the State.

\* \* \*

To any officer authorized to arrest for this offense—Greeting:

You are hereby commanded forthwith, to arrest the named defendant and safely keep so that you have said defendant in the above court without delay to answer the complaint and be dealt with as the law directs."

There appears in the record, dated 26 March 1970 over the signature of Judge Copeland and under the heading "Jury, Plea, Verdict and Judgment," the following:

"In open court, the defendant appeared for trial upon the charge of speeding 90 mph in a 55 mph zone; and driving while license suspended, and thereupon entered a plea of not guilty.

Having been found guilty of the offense of speeding 90 mph in a 55 mph zone; and driving while license suspended, which is a violation of G.S. 20-180 and G.S. 20-28 ss. (a), and of the grade of misdemeanor,

It is ADJUDGED that the defendant be imprisoned for the term of two years in the common jail of Franklin County as to the count charging him with speeding 90 mph in a 55 mph zone; as to the count charging him with driving after his license was revoked or suspended, it is the judgment of the Court the defendant be confined to the common jail of Franklin County for a term of two years, to serve under the supervision of the N. C. Department of Correction."

The defendant gave notice of appeal to the Court of Appeals.

*Attorney General Morgan, Assistant Attorney General Costen, and Staff Attorney Denson for the State.*

*Hubert H. Senter for defendant appellant.*

MALLARD, Chief Judge.

There was evidence by the State that the defendant was operating an automobile on the 16th day of August 1968 on Highway U.S. 1A south of Franklinton at a speed in excess of

90 miles per hour and that at the time thereof, his operator's license and driving privilege were in a state of suspension. The evidence tended to show that the defendant had been notified by the North Carolina Department of Motor Vehicles (Department), by mail dated 5 April 1968, of the suspension of his operator's license and driving privilege from 10 April 1968 to 10 April 1969 upon a conviction for speeding in excess of 75 miles per hour and, by mail dated 24 May 1968, of the suspension of his operator's license and driving privilege from 29 May 1968 to 29 May 1969 for two convictions of reckless driving, one in North Carolina and one in Virginia. (The dates "1966" as shown in the first line of the official notices on pages 17 and 19 of the printed record are in error; the original record reveals, and the defendant conceded on the oral argument, that each of these dates should be "1968.")

The defendant did not testify but offered other testimony. His evidence tended to show that he was not driving a vehicle at the time and place in question but was somewhere else and could not have been driving the automobile.

The printed record has blank spaces in the affidavit and order of arrest portions of the instrument upon which defendant was tried where the name of the "issuing official" should be, indicating that there was no issuing official, but when the printed record is compared with the original record on file with the clerk of this court, it is clear that there was an issuing official. The defendant on oral argument concedes that there was an issuing official and that he was a justice of the peace. To assure proper consideration, the parties should not include in the record on appeal a photographic reproduction of a record without ascertaining that it is readable and an accurate reproduction. In fairness to those who prepared the printed record, it should be said that the signature of the issuing official is illegible. His title is listed on the printed record as "P"; however, upon an examination of the original record, it appears that the title of the issuing official was listed as "J.P."

[1] The affidavit upon which the warrant of arrest was based appears to have been sworn to on 16 August 1968 before this justice of the peace. A justice of the peace could issue warrants of arrest in Franklin County on 16 August 1968. G.S. 15-18. The order of arrest in this case referred to "the complaint" and both appeared on the same sheet of paper. When the order of arrest refers to an attached affidavit or complaint, the affidavit or

State v. Teasley

complaint becomes a part of the warrant of arrest. G.S. 15-20; *State v. Higgins,* 266 N.C. 589, 146 S.E. 2d 681 (1966) ; *Moser v. Fulk,* 237 N.C. 302, 74 S.E. 2d 729 (1953) ; 4 Strong, N. C. Index 2d, Indictment and Warrant, § 7, p. 344.

[2]   At his trial on 14 January 1969 in the district court (which was established in Franklin County on the first Monday in December 1968), the defendant made a motion to quash before entering a plea to the charges included in the warrant. After the imposition of judgment in the district court, the defendant appealed to the superior court where trial was *de novo.* The defendant did not move to quash in the superior court until after the State had presented its evidence and rested. The record reveals that the defendant contended he had not entered a formal plea; the solicitor contended he had. However, in the record under the title "Jury, Plea, Verdict and Judgment," it appears that he did enter a plea of not guilty. Moreover, the record shows that the defendant appeared at the trial in the superior court, engaged in the selection of a jury, and cross-examined the State's witness. By pleading and participating in the trial, the defendant waived any defect incident to the authority of the person issuing the warrant, and the motion to quash made after the State had rested was addressed to the discretion of the trial judge. *State v. Blacknell,* 270 N.C. 103, 153 S.E. 2d 789 (1967) ; 4 Strong, N. C. Index 2d, Indictment and Warrant, § 15.

[3]   The defendant contends that the warrant does not sufficiently set forth the charges upon which he was tried. A warrant and the affidavit upon which it is based are tested by rules less strict than those applicable to indictments. 4 Strong, N. C. Index 2d, Indictment and Warrant, § 9, p. 350. A warrant should not be quashed or the judgment arrested for mere informalities or absence of refinements. G.S. 15-153; *State v. Wells,* 259 N.C. 173, 130 S.E. 2d 299 (1963) ; *State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133 (1954).

[4]   A warrant of arrest is sufficient if it clearly gives the defendant notice of the charge against him, so that he may prepare his defense, and if it enables him to plead former acquittal or former conviction should he again be brought to trial for the same offense. It must also enable the court to pronounce judgment in case of conviction. *State v. Dorsett* and *State v. Yow,* 272 N.C. 227, 158 S.E. 2d 15 (1967) ; *State v. Burton,* 243 N.C. 277, 90 S.E. 2d 390 (1955). See also *State v. Saffo Jacobs,* 9 N.C. App. 597, 176 S.E. 2d 833 (1970).

State v. Teasley

[5]   We do not approve of the use of the uniform traffic ticket used in this case as a warrant of arrest for the reasons set forth by Judge Parker in *State v. Letterlough,* 6 N.C. App. 36, 169 S.E. 2d 269 (1969). However, in this case we hold that the warrant, when tested by the applicable rules, is sufficient to withstand the defendant's motion to quash and also his motion in arrest of judgment. *State v. Dorsett* and *State v. Yow, supra; State v. Sawyer,* 233 N.C. 76, 62 S.E. 2d 515 (1950) ; *State v. Cochran,* 230 N.C. 523, 53 S.E. 2d 663 (1949) ; *State v. Letterlough, supra.*

The defendant also challenges the introduction into evidence of State's Exhibit 1 which is dated 17 February 1970 and consists of five pages, including the following:

1.   A letter from Joe W. Garrett, Commissioner, authorizing Edward H. Wade to be the custodian of all official records of the Department and empowering Edward H. Wade to certify copies of the records of the Department under the provisions of G.S. 20-42.

2.   A "Driver's License Record Check for Enforcement Agencies" on Robert Lee Teasley, 501 Chavis Street, Franklinton, North Carolina, signed by Edward H. Wade.

3.   "Official Notice and Record of Suspension of Driving Privilege," dated 24 May 1968, addressed to Robert L. Teasley, Route 1, Franklinton, North Carolina, informing him, among other things, of the suspension of his driving privilege "for two offenses of reckless driving," effective 29 May 1968 to 29 May 1969, signed by Ralph L. Howland, Commissioner, and supported by a certificate dated 24 May 1968 signed by Hazel Flowers appearing on the face of the original record. (The printed record incorrectly shows this date as 5 April 1968.)

4.   "Official Notice and Record of Suspension of Driving Privilege" dated 5 April 1968, addressed to Robert L. Teasley, Route 1, Franklinton, North Carolina, informing him, among other things, of the suspension of his driving privilege "for speeding over 75 MPH," effective 10 April 1968 (as shown on original record—the printed record incorrectly shows this date to be "29 May 1966") to 10 April 1969, signed by Ralph L. Howland, Commissioner, and supported by a certificate dated 5 April 1968 of Hazel Flowers appearing on the face of the original record.

State v. Teasley

**[6]** The certificates appearing on both of the foregoing official notices of suspension are identical except as to dates (one is dated 24 May 1968 and one 5 April 1968), and each reads:

"I certify that I am an employee of the North Carolina Department of Motor Vehicles and that the original of this document was placed in the United States mail, postage prepaid, this date, addressed as appears hereon, which address is shown by the records of the Department.

s/ Hazel Flowers

Sworn to and subscribed before me this 24 day of March, 1970.

(SEAL)              s/ Topsy Coleman, Notary Public

My commission expires: Nov. 5, 1974."

In our opinion, the words "this date" mentioned in the certificate referred to the date of the certificate and not the date it was sworn to.

We hold that the portion of the foregoing certificates which purports to show that they were "(s)worn to and subscribed" before a notary public on 24 March 1970 is surplusage and does not vitiate their effect as certificates under the provisions of G.S. 20-48 and G.S. 8-35.

In G.S. 8-35 it is provided, among other things, that:

"Any such certificate shall be prima facie evidence of the genuineness of such certificate and seal, the truth of the statements made in such certificate, and the official character of the person by which it purports to have been executed."

Upon conviction in North Carolina of two charges of reckless driving committed within a period of twelve months, it is mandatory, under the provisions of G.S. 20-17(6) and G.S. 20-19(f), that the Department revoke the operator's license of such person for a period of twelve months. This statute (G.S. 20-17) does not specifically require notice, and revocation under this statute is not reviewable in court. *Underwood v. Howland, Comr. of Motor Vehicles,* 274 N.C. 473, 164 S.E. 2d 2 (1968).

However, in G.S. 20-24 it is provided that when any person is convicted of any offense directing mandatory revocation of

his operator's or chauffeur's license, the court in which the conviction is had shall require the surrender of his license and forward it to the Department. This gives the licensee sufficient notice that his operator's license has been revoked.

The defendant's "Driver's License Record Check" shows that he had been convicted of reckless driving on 1 March 1968 in Oxford, North Carolina, and again on 11 March 1968 in Virginia. The Supreme Court has held in the case of *Carmichael v. Scheidt, Comr. of Motor Vehicles,* 249 N.C. 472, 106 S.E. 2d 685 (1959), that under the provisions of G.S. 20-23, it is discretionary with the Department to suspend or revoke the operator's license upon receiving notice of a conviction of such person in another state of an offense therein which, if committed in this state, would be grounds for suspension or revocation.

In the instant case the section of the licensing statute upon which the Department acted, as appears on the original of the record on file, is partially illegible, and the printed record of the notice dated 24 May 1968 incorrectly states that the Department was acting under "G.S. 20-15A-7 & 20-23." From the remaining portion of this notice, it is clear that the Department correctly acted under the provisions of subsection (7) of section (a) and the other provisions of G.S. 20-16 which require that notice be given when only one of the convictions for reckless driving occurred in North Carolina.

The Department also has statutory authority to suspend the operator's license and driving privilege of any operator, with or without a preliminary hearing, upon a showing by its records that the licensee has been convicted of or pleaded guilty to operating a motor vehicle at a speed in excess of 75 miles per hour. G.S. 20-16(a)(10). See also *In re Revocation of License of Wright,* 228 N.C. 584, 46 S.E. 2d 696 (1948).

Upon suspending the operator's license and driving privilege of a person for any of the causes stated in G.S. 20-16, it is required by section (d) thereof that the Department shall immediately notify the licensee in writing and upon request afford him an opportunity for a hearing unless a preliminary hearing was held before his license was suspended. Under G.S. 20-48, it is required that the notice shall be given "either by personal delivery thereof to the person to be so notified or by deposit in the United States mail of such notice in an envelope with postage prepaid, addressed to such person at his address as shown by the records

of the Department." This statute further provides that "(t)he giving of notice by mail is complete upon the expiration of four days after such deposit of such notice. Proof of the giving of notice in either such manner may be made by the certificate of any officer or employee of the Department or affidavit of any person over twenty-one years of age, naming the person to whom such notice was given and specifying the time, place, and manner of the giving thereof."

[7]  The defendant contends that the notices were addressed to him at Route 1, Franklinton, and that the "Driver's License Record Check," which is a part of State's Exhibit 1, reveals that his address was 501 Chavis Street, Franklinton.  The defendant did not raise the question of a failure to receive the notice by his evidence; he raises it in his brief.  The "Record Check" shows that the search date was 24 March 1970.  The official notices and record of suspension show that one is dated 24 May 1968 and one is dated 5 April 1968.  In this case the official notices and record of suspension were sufficient to show that the defendant's operator's license and driving privilege had been suspended and were in a state of suspension on 16 August 1968.

Our research has failed to find any statute requiring a person holding an operator's or chauffeur's license to notify the Department when he changes his address, although G.S. 20-14, after an amendment in 1969, provides for the issuance of a duplicate license "if it is necessary to change the name or address thereon." G.S. 20-67 requires a person applying for or holding a certificate of title for a motor vehicle to notify the Department within ten days after changing his address. It seems that it would be the better practice for a person holding an operator's or chauffeur's license to also notify the Department of a change of address.

From the record it appears that this defendant was an habitual and persistent violator of the laws relating to the operation of motor vehicles. He knew or should have known that his operator's license and driving privilege could be revoked or suspended upon conviction of two offenses of reckless driving within twelve months or upon conviction of the operation of a motor vehicle at a speed in excess of 75 miles per hour. The fact that he may have moved, if he did, after 5 April 1968 and thereafter informed the Department of his new address (which the record indicates) did not vitiate the notice of suspension which

State v. Teasley

was mailed to him at his address as shown by the records of the Department on 5 April 1968.

[8]    There is a presumption that mail, with postage prepaid and correctly addressed, will be received. *Petroleum Corp. v. Oil Co.,* 255 N.C. 167, 120 S.E. 2d 594 (1961). The rule with respect thereto is stated in *Hagner v. United States,* 285 U.S. 427, 76 L. Ed. 861 (1932), as follows:

> "* * * The rule is well settled that proof that a letter properly directed was placed in a postoffice, creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." See also *United States v. Bowen,* 414 F. 2d 1268 (3rd Cir. 1969) ; *United States v. DeNarvaez,* 407 F. 2d 185 (2d Cir. 1969), *Whitney v. United States,* 328 F. 2d 888 (5th Cir. 1964).

[9]    We hold that G.S. 20-48, which is the statute providing for the manner in which notice is to be given, is reasonably calculated to assure that notice will reach the intended party and afford him the opportunity of resisting or avoiding the proposed suspension, as well as to give him notification of the actual suspension of his operator's license and driving privilege.

[7]    The crime of driving a motor vehicle while one's operator's license is suspended is statutory. There is nothing in the statute [G.S. 20-28(a)] which would imply that knowledge or intent is a part of the crime of operating a motor vehicle after one's license has been suspended. When the Department complied with the procedure set forth in the statute as to notice of suspension of the operator's license and driving privilege, such compliance constituted constructive notice to the defendant that his license had been suspended. G.S. 20-48; *State v. Hebert,* 124 Vt. 377, 205 A. 2d 816 (1964) ; *Bureau of Motor Vehicles v. Fisher,* 117 Ohio App. 59, 189 N.E. 2d 744 (1962) ; *State v. Barber,* 24 Conn. Sup. 346, 190 A. 2d 497 (1962) ; *State v. Baltromitis,* 5 Conn. Cir. 72, 242 A. 2d 99 (1967).

In the case of *Shue v. Scheidt, Comr. of Motor Vehicles,* 252 N.C. 561, 114 S.E. 2d 237 (1960), the Supreme Court said:

> "The operation of a motor vehicle on a public highway is not a natural right. It is a conditional privilege which the State in the interest of public safety acting under its police power may regulate or control, and suspend or revoke the

driver's license. *In re Revocation of License of Wright,* 228 N.C. 584, 46 S.E. 2d 696; *Commonwealth v. Ellett,* 174 Va. 403, 4 S.E. 2d 762. As this Court said in *Harvell v. Scheidt, Comr. of Motor Vehicles,* 249 N.C. 699, 107 S.E. 2d 549: '. . . the suspension or revocation of a driver's license is no part of the punishment for the violation or violations of traffic laws. . . . The purpose of the suspension or revocation of a driver's license is to protect the public and not to punish the licensee.' "

The defendant cites *State v. Hughes,* 6 N.C. App. 287, 170 S.E. 2d 78 (1969), in support of his contention that notice under G.S. 20-48 is inadequate and insufficient. The Hughes case is not in conflict with the opinion in this case. The decision in Hughes turned on the fact that there was no competent evidence that any notice of suspension of the operator's license and driving privilege was mailed to the defendant. In the case before us, the State introduced the certificate of an employee of the Department that the notice of suspension had been placed in the United States mail, postage prepaid, addressed to defendant.

We hold that the proof of giving of the notice of the "Official Notice and Record of Suspension of Driving Privilege" is sufficient in this case to comply with the provisions of G.S. 20-48; that the provisions of G.S. 20-48, together with the provisions of G.S. 20-16(d), relating to the right of review, and the provisions of G.S. 20-25, relating to the right of appeal, satisfy the requirements of procedural due process; and that the trial judge correctly admitted State's Exhibit 1 into evidence. See 60 C.J.S., Motor Vehicles, § 164.32, p. 891, and 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 120, p. 682.

[10] The defendant contends that the trial judge committed error in admitting State's Exhibit 1 over his objection. He further contends that there was error in overruling his motion to strike after the solicitor read to the jury from State's Exhibit 1, as follows:

"North Carolina Department of Motor Vehicles, Driver License Record Check for Enforcement Agencies. Name and Address, Robert Lee Teasley, 501 Chavis Street, Franklinton, N. C. License number, 898866; race, Negro; birth date; month, date year, 05, 07, 43; sex, male. And down the bottom portion mail date of suspension, month, day, year, 04, 05, 68; effective date of suspension, month, day, year, down

in that column, 04, 10, 68; date eligible for reinstatement, month, date, year, 04, 10, 69. Suspension—a column headed suspension or revocation and down the column, suspension. *Column heading nature of record or reason for revocation, speeding over 76 miles per hour* and then this portion; certification, I certify that the foregoing is a true copy of the driver's license record of the within named person on file with the North Carolina Department of Motor Vehicles. Signed, Edward H. Wade, Director, Driver License Division." (Emphasis Added.)

[11]  The records of the Department, properly authenticated, are competent for the purpose of establishing the status of a person's operator's license and driving privilege. *State v. Mercer,* 249 N.C. 371, 106 S.E. 2d 866 (1959) ; G.S. 8-35; G.S. 20-42 (b).

The defendant in the case before us argues that he did not go upon the witness stand and did not put his character in issue, and, therefore, it was prejudicial error for the solicitor to read to the jury that his license had been suspended for speeding over 76 miles per hour.

In the case of *State v. Corl,* 250 N.C. 252, 108 S.E. 2d 608 (1959), a certified record of the Department as to the status of the defendant's operator's license and driving privilege was introduced in evidence over defendant's objection. This record revealed that the defendant had been convicted of twelve separate violations of the motor vehicle laws since 1946. The defendant did not go upon the stand and testify and did not otherwise put his character in issue. The Court said:

> "In our opinion the defendant was entitled to have the contents of the official record of the status of his driver's license limited, if he had so requested, to the formal parts thereof, including the certification and seal, plus the fact that under official action of the Department of Motor Vehicles the defendant's license was in a state of revocation or suspension on the date he is charged with committing the offenses for which he was being tried.

> Ordinarily, where evidence admissible for some purposes, but not for all, is admitted generally, its admission will not be held for error unless the appellant requested at the time of its admission that its purpose be restricted. Rule 21, Rules of Practice in the Supreme Court, 221 N.C. 558, General Statutes, Volume 4A, page 175, *et seq; Brewer v. Brewer,*

238 N.C. 607, 78 S.E. 2d 719; *S. v. McKinnon,* 223 N.C. 160, 25 S.E. 2d 606; *S. v. Hendricks,* 207 N.C. 873, 178 S.E. 557.

In the instant case, the defendant made no request that the contents of the certified record of the status of his driver's license be limited to the portion or portions thereof relating to the status of his driver's license on the date he was charged with committing the offenses for which he was being tried. Hence, this assignment of error is overruled."

In the case of *State v. Briley,* 259 N.C. 137, 129 S.E. 2d 892 (1963), the Supreme Court, in a *per curiam* opinion, said:

"The State offered in evidence a certified copy of the official record (Form DL 49) of the North Carolina Department of Motor Vehicles, Drivers License Division, of defendant's convictions for violations of the motor vehicle laws and of the Department's actions on account thereof. According to this record, defendant's operator's license was permanently revoked on March 12, 1957. Defendant objected 'to the portion that is not germane to this inquiry' and excepted to the admission of said record over his said objection. Nothing appears in the record indicating defendant designated what portion(s) of said record he considered 'not germane to this inquiry.' Hence, for reasons stated in *S. v. Corl,* 250 N.C. 252, 108 S.E. 2d 608, the assignment of error based on said exception is overruled."

In the instant case the defendant, when he objected, made no request that the certified record of the status of his operator's license and driving privilege be limited in any way. In making his motion to strike, he did not specify any particular portion of the record to be stricken. In view of the holding of the Supreme Court in *State v. Corl, supra,* and *State v. Briley, supra,* the assignments of error based upon these exceptions are overruled.

The defendant's other assignments of error have been considered, and no prejudicial error is made to appear therein.

No error.

Judges PARKER and HEDRICK concur.