UNITED STATES of America,
Appellee,

v.

Grover Lee MULLIN and Stephen Parker
Perry, Appellants.

No. 9049.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 20, 1963.

Decided March 10, 1964.

Irvin B. Tucker, Jr., Raleigh, N. C.
(Hill Yarborough, Louisburg, N. C., on
brief), for appellants.

Alton T. Cummings, Asst. U. S. Atty.
(Robert H. Cowen, U. S. Atty., on brief),
for appellee.

Before BOREMAN and J. SPENCER BELL, Circuit Judges, and FIELD, District Judge.

J. SPENCER BELL, Circuit Judge:

Defendants Grover Lee Mullin and Stephen Parker Perry were tried and convicted for possessing non-taxpaid whiskey in violation of the Internal Revenue Code, 26 U.S.C. § 7206(4). Defendants appeal, assigning as error the failure of the district court to grant their motions to suppress evidence, alleged by them to have been illegally obtained. We reverse the judgment of the district court since in our view the arresting officer, in acting without a search warrant, committed an unreasonable search and seizure and thereby violated the broad mandate of the fourth amendment.[1]

Shortly after 8:00 P.M. on May 11, 1962, two federal agents stationed themselves in some weeds next to a small smokehouse, located seventy-five feet from the residence of the defendant Perry. The agents' position was slightly to the side of a direct line between the residence and the smokehouse. They watched as an automobile and pickup truck without lights were driven into the back yard of the residence. Four persons got out of the vehicles and proceeded to unload cardboard cartons from the pickup truck and to carry them into the smokehouse. Upon completion of these operations, two of the persons, later identified as the present defendants, went into the smokehouse and closed the door.

Agent Carter immediately got up from his nearby position of hiding and went up to the smokehouse. Before entering he discerned light from a flashlight inside coming through cracks in the door and detected the smell of non-taxpaid whiskey. He thereupon opened the door, turned on his own flashlight, stepped inside, announced that he was a federal officer, and advised the defendants that they were under arrest. Inside the smokehouse, Carter discovered that the cardboard boxes that he had previously seen being carried to the smokehouse contained seventy-one gallons of non-taxpaid whiskey.

Upon indictment for the possession of non-taxpaid whiskey, the defendants filed a motion to suppress evidence relating to this whiskey as the fruit of an illegal search and seizure. During their trial, the defendants renewed their motion at the close of the Government's evidence and again at the close of all the evidence. In all instances, their motions were overruled by the presiding judge. The objectionable evidence, in the form of testimony relating to the whiskey, comprised the heart of the Government's case against defendants and without this evidence, the Government could not have prevailed.

 Preliminarily, we find that defendants were charged with a possessory crime and each had proper standing to file a motion to suppress. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The Government contends, however, that the trial court was correct in allowing the evidence to be admitted since Carter had "positive knowledge" that a felony was being committed in his presence and that the search and seizure were incident to the arrest of the felons and hence, not defective for lack of a warrant. Carter's "positive knowledge," the Government reasons, sprang from his observation of cardboard boxes being carried to the smokehouse and his detection, prior to entry, of telltale odors emanating from within.

Assuming Carter's testimony comported with what actually transpired and that he had, at a minimum, reasonable grounds to believe that a felony was being committed (although we are unable

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.CONST. amend. IV.

to see how the observation of cardboard boxes, without more, could give rise to an inference of their contents or how sealed containers could emit the odor of whiskey), we think that the Government here attempts to do the very thing prohibited in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In the Johnson case federal officers detected the odor of burning opium emanating from a hotel room. Acting on this observation, the officers entered the room without a search warrant and arrested its only occupant. Inside the room they found incriminating evidence —opium and smoking apparatus, still warm from recent use. The Government contended that the search was valid as incident to a lawful arrest. In rejecting the Government's claim, Mr. Justice Jackson pointed out that the search, which culminated in the discovery of contraband, had actually begun with the officer's unauthorized entry, and therefore could not be considered incident to petitioner's arrest. The same sequence of events occurring there occurred here.

■ Odors associated with contraband that lead a reasonable man to believe that a crime has been committed have been recognized as a valid basis on which to seek a search warrant. Johnson v. United States, supra; Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932); Monnette v. United States, 299 F.2d 847 (5 Cir. 1962). The Supreme Court has recently reaffirmed the principle, however, that such observations, while furnishing probable cause for the issuance of a warrant, will not suffice to justify a search and seizure without a warrant. Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed. 2d 828 (1961). The underlying reason for this distinction was explained in the Johnson case:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." 333 U.S. at 13–14, 68 S.Ct. 369, 92 L.Ed. 436.

There are exceptional circumstances, discussed in Johnson, where a magistrate's warrant for search may be dispensed with, but we do not find them present here.

■ The case most heavily relied on by the Government, United States v. Young, 322 F.2d 443 (4 Cir. 1963), did not involve an unauthorized breaking and entering prior to arrest. There, occurrences at the scene led agents to suspect that defendants were engaged in the packaging and handling of non-taxpaid whiskey. The agents approached a barn where the operations were being carried on. Before the agents entered, Young opened the door and undertook to leave. At this point he and an accomplice were arrested. Under the facts relative to the arrest, we upheld the contemporaneous search of the barn. In the present case, however, the extenuating circumstance of a search incident to

an arrest is lacking. Consistent with the Johnson case, therefore, we must hold that the district court committed reversible error in refusing to suppress the evidence pertaining to the discovery of the non-taxpaid whiskey.

 In so holding, we necessarily reject the Government's contention that the smokehouse here in question was not within the curtilage of Perry's residence and hence not under protection of the fourth amendment. The record reveals that the smokehouse was approximately seventy-five feet from Perry's residence and that there was no intervening barrier of a fence or a driveway between the two buildings. The residence was located in a rural community and was partially surrounded in semicircular fashion by a number of outbuildings, a pattern traditionally found in the area. Perry rented the premises and was living in the residence, along with his family, at the time of his arrest. The smokehouse, from outside appearances, was typical of any normal farm smokehouse. Under the circumstances here existing, we conclude that the smokehouse was a domestic building constituting an integral part of a group of structures making up the farm home. See Walker v. United States, 225 F.2d 447 (5 Cir. 1955); Roberson v. United States, 165 F.2d 752 (6 Cir. 1948) (smokehouse held to be within curtilage). We are not dissuaded from this view by testimony of Government witnesses that after entering the smokehouse they found it to be in a dilapidated condition, unfit (in their opinion) for the storage of meat. The critical moment was the appearance of the smokehouse before entry; subsequent observations as to its condition are irrelevant. Cf. United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

 Assuming *arguendo* that no violation of the fourth amendment rights of the petitioners occurred, there is nevertheless a statutory prohibition against the agent's conduct which requires us to reverse the court's judgment. According to the testimony of Carter himself, he gave no indication of his authority or purpose in entering the smokehouse until after he had opened the door and forced his way in. "I opened the door, turned on my flashlight and announced myself as a federal officer, and advised the two persons inside of the building that they were under arrest." Record, p. 10. This conduct was inconsistent with the provisions of 18 U.S.C. § 3109, which provide that:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

In Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), federal narcotics agents broke into petitioner's residence without announcing their authority and purpose and without having first secured a search warrant. They were acting under the belief that petitioner was in possession of marked bills obtained in a transaction involving narcotics. The Court held that evidence discovered in this manner was illegally obtained and should have been suppressed at petitioner's trial under the controlling District of Columbia ordinance, substantially identical to § 3109. The Government conceded and the Court held that the validity of an entry either for search or arrest and with or without a warrant was to be tested by the criteria under the ordinance. Limitations on entry to execute an arrest without warrant should obviously be no less stringently applied than when officers act to execute a proper and valid warrant. The Court reversed the judgment in the exercise of its regulatory powers.[2]

---

2. McNabb v. United States, 318 U.S. 332, 341, 63 S.Ct. 608, 87 L.Ed. 819 (1943). This power also inheres in the circuit courts, overseeing the district courts.

See Comment, The Supervisory Power of the Federal Courts, 76 Harv.L.Rev. 1656 (1963).

Under the rationale of the Miller case, we find that agent Carter in breaking into the smokehouse without first announcing his purpose and authority violated § 3109, and the evidence flowing from this illegal entry should have been suppressed. We are not unmindful of the fact that § 3109 speaks of "house" and we are here concerned with an unannounced entry into an outbuilding, separate and distinct from Perry's residence. However, we are unwilling to construe narrowly a statute which embodies a traditional right which is deeply imbedded in Anglo-American Law.

Reversed.