STATE OF NORTH CAROLINA v. WILLIAM H. STANFIELD

No. 7315SC571

(Filed 24 October 1973)

1. Searches and Seizures § 1— authority of officer to make limited search — concealed weapon found

An officer had the right to make a limited search of defendant's person at the time and in the manner which he did where the officer knew that on at least one previous occasion defendant had fought with a fellow officer, the officer had been informed by phone that defendant was armed and in a public place known to police as a trouble spot, the place was within the officer's patrol responsibility, the officer investigated and found defendant at the trouble spot, defendant kept his right side turned away from the officer but the officer noticed a bulge in defendant's coat pocket anyway, the officer "patted down" the bulge and, upon discovering it to be a heavy object, extracted a loaded pistol.

2. Constitutional Law § 31— identity of confidential informer — disclosure not required

In a prosecution for carrying a concealed weapon in violation of G.S. 14-269 where defendant did not attempt to obtain disclosure of the identity of the confidential informant whose tip led to his arrest until a *voir dire* examination at trial and at that time he completely failed to demonstrate or even to suggest in any manner how disclosure would benefit his defense, the trial court properly sustained the State's privilege against disclosure.

State v. Stanfield

3. **Criminal Law § 99— questions by trial court — no expression of opinion**
   Questions of the trial judge eliciting testimony which tended to prove an element of G.S. 14-269, that defendant was not on his own premises when discovered carrying a concealed weapon, did not constitute an expression of opinion by the judge on the strength of the evidence, or on the credibility of a witness.

APPEAL by defendant from *Bailey, Judge,* 26 February 1973 Session of Superior Court held in ALAMANCE County.

Defendant was charged by warrant with carrying a concealed weapon while off his own premises in violation of G.S. 14-269. After trial and conviction in the District Court he appealed to the Superior Court where he again pled not guilty. The State presented as its only witness Officer Tommy Bray of the Burlington Police Department, who testified in substance to the following:

On Saturday night, 6 January 1973, Officer Bray was on duty at the Police Department. About midnight he received a phone call in which he was given information that defendant was at the Brown Derby located in the Holly Hill Mall in Burlington and that defendant had a pistol in his coat. The Brown Derby was a place in Officer Bray's "patrol boundary" and the police had frequently experienced trouble there. Bray had known the defendant about ten or twelve years, had once observed a fight between defendant and another police officer, and knew that a warrant had recently been issued charging defendant with an assault. After receiving the phone call, Bray proceeded directly to the Brown Derby. Upon entering, he saw defendant in the crowd, sitting in a booth and wearing a three-quarter length coat. As Officer Bray approached the booth, defendant stood up, keeping the right side of his body away from the officer. Bray walked up and told defendant that he wanted to speak to him about something, but did not then tell him what was to be discussed. Bray intended to talk with defendant about the assault charge. Defendant refused to talk with the officer and instead took several steps towards his girl friend. As he did this, Officer Bray noticed a bulge in defendant's right coat pocket. Officer Bray patted the outside of defendant's clothing, felt a heavy object in the right coat pocket, reached in, and pulled out a loaded .32 caliber automatic pistol. Bray thereupon placed defendant under arrest on the charge for which the warrant was subsequently issued and on which defendant was tried.

Defendant testified to the effect that he did not know that any weapon was in his coat at the time of the arrest and that the pistol must have been placed there without his knowledge by someone else at some time earlier in the evening.

The jury found defendant guilty as charged. From judgment sentencing defendant to prison for the term of 90 days, defendant appealed.

*Attorney General Robert Morgan by Assistant Attorney General William F. O'Connell for the State.*

*R. Chase Raiford for defendant appellant.*

PARKER, Judge.

[1] Defendant contends that the search of his person violated his Fourth Amendment rights and that the fruits of the search should have been excluded from evidence. We do not agree. While the search was made without a search warrant and the officer may have lacked probable cause to make an arrest, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed. 2d 889, 88 S.Ct. 1868. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 32 L.Ed. 2d 612, 92 S.Ct. 1921. Our own Supreme Court has recently recognized a limited right in police officers in appropriate circumstances to "stop and frisk." *State v. Streeter*, 283 N.C. 203, 195 S.E. 2d 502.

In the present case the officer knew that on at least one previous occasion defendant had fought with a fellow officer. He had been informed by telephone that defendant was armed and was in a public place known to the police as a local trouble spot. This place was within the officer's patrol responsibility. On investigating he found defendant at the place his informant told him defendant would be, thus corroborating at least a portion of the information which the informant had given. When the officer attempted to talk with defendant, defendant kept his right side turned away from the officer. Despite this maneuver the officer noted a bulge in defendant's right coat

pocket. In our opinion these circumstances justified the officer's limited action in "patting down" the outside of defendant's coat pocket. This action produced the additional information that a "heavy object" was contained therein, and this additional information justified the further search into the pocket itself which resulted in the discovery of the loaded pistol. In our opinion the officer had the right to make the limited search of defendant's person at the time and in the manner which he did. Indeed, he would have been derelict in his duty had he failed to do so.

Holding, as we do, that the search was lawful, defendant suffered no prejudicial error in the fact that some evidence concerning the search was admitted before the jury over defendant's general objections prior to the time the trial judge conducted a voir dire and determined that the search was valid. As soon as it became apparent that defendant was objecting to the lawfulness of the search, the trial judge promptly conducted a voir dire examination and made findings as to the circumstances under which the search had been conducted.

[2] Defendant contends error in the trial court's refusal to order disclosure of the identity of the informant who telephoned Officer Bray at the police station. The courts recognize a limited privilege in the State to withhold disclosure of the identity of persons who furnish information of violations of law to officers charged with its enforcement. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro v. United States,* 353 U.S. 53, 1 L.Ed. 2d 639, 77 S.Ct. 623. Where the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. *Roviaro v. United States, supra.* Whether this is so depends on the circumstances of each case. *State v. Cameron,* 283 N.C. 191, 195 S.E. 2d 481. In the present case, the only time defendant sought to obtain disclosure of the identity of the informant was during the voir dire examination. At that time he completely failed to demonstrate or even to suggest in any manner how disclosure would benefit his defense. The trial judge's ruling sustaining the State's privilege against

---

State v. Stanfield

---

disclosure was clearly correct at the time it was made. If we assume *arguendo* that a somewhat tenuous connection between the informer's identity and defendant's defense (that, unknown to him, someone else had slipped the loaded pistol into his coat pocket) might possibly have been perceived after defendant testified before the jury, defendant failed at that time to point this out to the trial judge or to repeat his request for disclosure. We hold that under the circumstances of this case defendant has failed to demonstrate prejudicial error in the trial court's ruling sustaining the State's privilege.

[3]   Defendant's final assignment of error concerns the following colloquy between the trial judge and Officer Bray at the close of the State's evidence:

'   "[Solicitor] :   No further questions.

"THE COURT: Who owns the Brown Derby?

"[Bray] :   A corporation, the gentleman over there in the brown coat can probably tell you (referring to the State ABC Officer in the Courtroom), it is a corporation from Greensboro, I understand.

'"THE COURT: As far as you know does Mr. Stanfield own it?

·"[Bray] :   No, sir.

"THE COURT: Thank you, you may cross examine him."

This testimony tended to prove an element of G.S. 14-269, that defendant Stanfield was not on his own premises when discovered carrying a concealed weapon. We do not agree with defendant's suggestion that the trial court's questioning was improper. By asking the questions the judge commented neither on the strength of the evidence nor on the credibility of a witness. Rather, the judge asked a neutral question which, depending upon the answer, would benefit either the State or the defendant. The questioning was within the sound discretion of the trial judge to conduct the trial in the interests of justice.

In the trial and judgment appealed from we find

No error.

Judges HEDRICK and BALEY concur.