State v. Walker

STATE OF NORTH CAROLINA v. FRANK WALKER, JR.

No. 7418SC943

(Filed 19 March 1975)

1. **Criminal Law § 84; Searches and Seizures § 1— warrantless search of car — probable cause — articles in plain view**

    Officers had reasonable grounds to believe that defendant's automobile contained contraband materials used in the operation of a numbers lottery, and officers lawfully searched the automobile without a warrant and seized lottery tickets and money found therein, where officers had information that a certain house was a pickup point in a lottery operation, officers on six occasions saw defendant stop his car in front of the house at 7:00 a.m. and a man hand him a package, police officers stopped their car in front of the house and a man gave them a package containing money and lottery tickets, shortly thereafter defendant's car appeared near the house and officers stopped the car, an officer by use of a flashlight saw a taped package on the floorboard with "P-7" written on it and recognized this as a code number used in a numbers lottery, the officer also saw a paper bag on the floorboard, officers arrested defendant, and officers then seized the paper bag containing money and the taped package; furthermore, the items were in plain view and no warrant was required for their seizure.

2. **Gambling § 3— sale of tickets for use in lottery — sufficiency of warrant**

    A warrant charging that defendant sold tickets and tokens to be used in a numbers "lottery" was sufficient to charge a violation of G.S. 14-291.1 without alleging that there was to be a "drawing or paying at any time, either within or without the State," since the word "lottery" embraces the elements of chance and prize.

3. **Criminal Law § 51; Gambling § 3— qualification of expert in numbers lotteries**

    The trial court did not err in finding that a police officer was qualified to testify as an expert in the field of numbers lotteries where the officer testified that he worked as vice squad detective for four years and was assigned to numbers lottery cases for one year, that he had read several books about numbers lotteries and had received instruction concerning such lotteries in two schools on criminal investigation, and that he had previously testified for the State as an expert in the field of numbers lotteries.

APPEAL by defendant from *Crissman, Judge.* Judgment entered 31 July 1974 in Superior Court, GUILFORD County. Heard in the Court of Appeals 22 January 1975.

This is a criminal prosecution wherein the defendant, Frank Walker, Jr., was charged in a warrant with the unlawful sale of lottery tickets in violation of G.S. 14-291.1.

The State offered evidence tending to show the following: At about 6:25 a.m. on 4 February 1974, Detectives Hill and Tysinger of the Greensboro Police Department stopped a white Volkswagen automobile operated by the defendant near the intersection of East Lee and Haskett Streets in the City of Greensboro. The defendant, who was the only occupant of the car, got out of the automobile and walked towards the police car. Detective Hill walked past the defendant and shined his flashlight into the Volkswagen. He observed a "heavily taped package" lying on the floorboard on the passenger side of the car. He recognized the number "P-7", which was written on the outside of the package, as a code number used in the operation of a numbers lottery and arrested the defendant for "operating a . . . lottery". Detective Hill also observed a "large paper bag" on the floorboard on the driver's side of the car. After arresting the defendant, he seized both the package and the paper bag. The two items taken from defendant's automobile contained $1,738.70 and pieces of paper with numbers and letters written on them. Detective Hill testified that he had been assigned to the Vice Division of the Greensboro Police Department for two years and that the Vice Division handles numbers lottery cases. On 4 February 1974 he was specifically looking for the automobile being driven by the defendant.

Over defendant's objection, Larry Gibson, a member of the Vice Division of the Greensboro Police Department from October 1970 until January 1974, was allowed to testify as an expert witness in the field of numbers lotteries. After explaining to the jury how a numbers lottery is operated, Gibson testified that the items contained in the package and bag taken from the Volkswagen automobile were "tickets, tokens, certificates and money used in the operation of a numbers lottery".

Defendant did not testify or offer any evidence in his own behalf.

The jury found the defendant "guilty as charged". From a judgment imposing a jail term of two (2) years, which was suspended and the defendant placed on probation, defendant appealed.

*Attorney General Edmisten by Assistant Attorney General Rafford E. Jones for the State.*

*Taylor & Upperman by Leroy W. Upperman, Jr., and Herman L. Taylor for defendant appellant.*

HEDRICK, Judge.

Defendant contends the trial court erred in admitting into evidence, over his objection and motion to suppress, the money and lottery tickets taken from his automobile without a search warrant.

Evidence obtained by an unreasonable search is inadmissible in both federal and state courts. U. S. Const., Amend. IV and V; N. C. Const., Art. I, § 20; *Mapp v. Ohio,* 367 U.S. 643 (1961); *State v. Simmons,* 278 N.C. 468, 180 S.E. 2d 97 (1971). However, it is equally well-settled that when contraband material is in plain view no search is necessary and the constitutional guarantee against unreasonable search and seizure does not prevent either the seizure of the contraband without a warrant or its introduction into evidence. *State v. Simmons, supra; State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970); *State v. Kinley,* 270 N.C. 296, 154 S.E. 2d 95 (1967); *State v. Dawson,* 23 N.C. App. 712, 209 S.E. 2d 503 (1974), cert. denied, 286 N.C. 417, 211 S.E. 2d 798 (1975). Automobiles and other conveyances may be searched without a warrant under circumstances that would not justify the search of a house, and a police officer in the exercise of his duties may search an automobile when the existing facts and circumstances are sufficient to support a reasonable belief that the automobile carries contraband materials. *Carroll v. U. S.,* 267 U.S. 132 (1925); *State v. Simmons, supra.*

In the instant case, a voir dire hearing was conducted by Judge Kivett prior to defendant's trial to determine the admissibility into evidence of the articles seized. Detective B. R. Dotson testified that he and several other members of the Vice Division of the Greensboro Police Department, including Detective Hill, had maintained a surveillance of a house located at 614 Bennett Street in Greensboro during January and the first part of February of 1974. They had information to believe that the house was being used in the operation of a numbers lottery as a pickup point in the collection process of money and lottery tickets.

On six different occasions between 18 January 1974 and 1 February 1974, Detective Dotson observed a light-colored Volkswagen with one taillight out and a bent license tag with the prefix "AZR" stop in front of the house at 614 Bennett Street. Each time, at approximately 7:00 a.m., the driver would turn

off his lights and pull over to the curb. A man would then come out of the house and hand a package to the driver, the sole occupant of the car. The Volkswagen would then proceed down the street.

On 4 February 1974 at 6:00 a.m., Detective Dotson and another officer, following the above described procedure, stopped their automobile in front of 614 Bennett Street. A black male, identified as Woodrow Crump, came out of the house and handed them a package containing money and lottery tickets. The officers arrested Crump; and Detectives Hill and Tysinger, who were present at the time of the arrest, stationed themselves in an unmarked patrol car around the corner from the house. At approximately 6:20 a.m., the light-colored Volkswagen with one taillight out with the license plate bent in such a manner so that only the prefix "AZR" was visible, which the officers had observed on other occasions, passed slowly by the officers but did not turn the corner and stop in front of 614 Bennett Street. The officers gave pursuit and stopped the automobile, which was being driven by the defendant. While the defendant was showing Detective Tysinger his driver's license, Detective Hill shined his flashlight into the car and observed a "brown paper sack" lying on the floorboard on the driver's side of the car. He also observed a package lying on the floorboard on the passenger side of the car with the number "P-7" written on it. Because Hill had seen "numbers used in the operation of lotteries of this nature numerous times", he arrested the defendant. Thereafter, he seized both the package and the "brown paper sack".

Based on the evidence adduced at the voir dire, Judge Kivett concluded that the officers had the right to stop the vehicle being operated by the defendant and the right to seize the "objects they saw in clear view with the flashlight".

[1] We think the facts and circumstances of this case were sufficient to furnish the officers reasonable grounds to believe that this particular Volkswagen automobile, which was driven by the defendant, contained contraband materials used in the operation of a numbers lottery. Furthermore, since the seizure of contraband does not require a warrant when its presence is fully disclosed without the necessity of a search, *State v. Kinley, supra,* the officers were justified in seizing the items containing the money and lottery tickets. *State v. Simmons, supra; State v.*

*Dawson, supra.* Both the heavily taped package with the number "P-7" written on it and the brown paper bag were in plain view on the floorboard of the car. The fact that Detective Hill saw the articles with the aid of a flashlight does not negate their admissibility. *State v. Craddock,* 272 N.C. 160, 158 S.E. 2d 25 (1967).

**[2]** Defendant next contends the trial court erred in denying his motion to quash the warrant because the warrant failed to allege all the essential elements of the offense defined by G.S. 14-291.1. The pertinent portion of the warrant charged that the defendant

" . . . did unlawfully, wilfully, have in his possession tickets, tokens, certificates and orders used in the operation of a lottery commonly known as a numbers lottery and further did cause to be sold and did sell tickets, tokens, certificates, and orders for shares in said numbers lottery at E. Lee St. and Hackett St. Greensboro, N. C.

The offense charged here was committed against the peace and dignity of the State and in violation of law N.C.G.S. 14-291.1."

G.S. 14-291.1 provides:

"If any person shall sell, barter or cause to be sold or bartered, any ticket, token, certificate or order for any number or shares in any lottery, commonly known as the numbers or butter and egg lottery, or lotteries of similar character, to be drawn or paid within or without the State, such person shall be guilty of a misdemeanor and shall be punished by fine or imprisonment, or both, in the discretion of the court. Any person who shall have in his possession any tickets, tokens, certificates or orders used in the operation of any such lottery shall be guilty under this section, and the possession of such tickets shall be prima facie evidence of the violation of this section."

Defendant argues that the warrant here is fatally defective in that it failed to allege that there was to be a "drawing or paying at any time, either within or without the State . . . . " A warrant is sufficient if it clearly gives the defendant notice of the charge against him so that he might prepare his defense, enables him to plead former acquittal or conviction should he again be brought to trial for the same offense, and enables the

court to pronounce judgment in case of conviction. *State v. Teasley,* 9 N.C. App. 477, 176 S.E. 2d 838 (1970).

In *State v. Lipkin,* 169 N.C. 265, 271, 84 S.E. 340, 342 (1915), our Supreme Court said:

> "A lottery, for all practical purposes, may be defined as any scheme for the distribution of prizes, by lot or chance, by which one, on paying money or giving any other thing of value to another, obtains a token which entitles him to receive a larger or smaller value, or nothing, as some formula of chance may determine."

A lottery is a chance for a prize for a price. Black's Law Dictionary 1097 (4th Ed. 1968). Thus, since the warrant charges the defendant with the sale of tickets and tokens to be used in a numbers "lottery", we are of the opinion that none of the essential elements of the offense has been omitted from the warrant. The word "lottery" embraces the elements of chance and prize. The warrant, in our opinion, is sufficient to give the defendant notice of the offense charged, to allow him to plead former jeopardy, and to allow the court to proceed to judgment. This assignment of error is overruled.

[3]    Finally, defendant contends the trial court erred in permitting Larry Gibson to testify as an expert witness in the field of numbers lotteries.

> "Whether the witness has the requisite skill to qualify him as an expert is chiefly a question of fact, the determination of which is ordinarily within the exclusive province of the trial judge. To be an expert the witness need not be a specialist or have a license from an examining board or have had experience with the exact type of subject matter under investigation, nor need he be engaged in any particular profession or calling. It is enough that, through study or experience, or both, he has acquired such skill that he is better qualified than the jury to form an opinion on the particular subject.
>
> A finding by the trial judge that the witness possesses the requisite skill will not be reversed on appeal unless there is no evidence to support it or the judge abuses his discretion." 1 Stansbury, N. C. Evidence (Brandis Rev.) § 133 [footnotes omitted] Accord, *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971).

There is plenary evidence in this record to support the finding of the trial judge that Gibson was qualified to testify as an expert in the field of numbers lotteries. Gibson testified that he worked as a "Vice Squad" Detective with the Greensboro Police Department for four years and was specifically assigned to numbers lottery cases for one year. Furthermore, he testified that he had read several books about numbers lotteries, had received instruction in the field of numbers lotteries "in two . . . schools on criminal investigation", and had previously testified for the State as an expert witness in the field of numbers lotteries. This assignment of error is overruled.

Defendant had a fair trial free from prejudicial error.

No error.

Judges MORRIS and PARKER concur.