STATE OF NORTH CAROLINA v. KENNETH SADLER

No. 7826SC987

(Filed 20 February 1979)

1. **Constitutional Law § 43; Criminal Law § 66.5— no right to counsel at show-up**
   Defendant was not entitled to counsel at a show-up where he had not been formally charged with a crime at the time of the show-up.

2. **Criminal Law § 66.10— impermissibly suggestive police station show-up—findings by court**
   The appellate court is bound by the trial court's findings that a police station show-up procedure was impermissibly suggestive and that a witness's in-court identification was based entirely on the show-up where they were supported by competent evidence.

3. **Searches and Seizures §§ 8, 12— stopping suspect for questioning—seizure of evidence—validity of arrest**
   Officers had reasonable grounds to stop defendant and his companion for questioning where the officers received a radio broadcast reporting an armed robbery in the area they were patrolling and giving a description of the two suspected robbers and the clothing they were wearing, the officers saw defendant and his companion a short distance from the robbery scene, and defendant and his companion generally fit the description of the suspects given over the police radio. Furthermore, there was no evidence to support the court's ruling that there was no probable cause for the officers to arrest defendant and its order suppressing a credit card and other articles belonging to the robbery victim which the officers discovered in defendant's possession where the court found that testimony as to how the officers obtained possession of the credit card and other articles was not believable, and the record was left bare of evidence to explain how the officers obtained such possession.

APPEAL by the State from *Snepp, Judge.* Order entered 5 September 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 30 January 1979.

Defendant was indicted for armed robbery and assault with intent to kill. He moved to suppress the introduction of identification testimony by the victim and a witness, and the introduction of a credit card, bus pass and bus tickets that were taken during the robbery and found in defendant's possession.

At the hearing Vera Yandle, an elderly woman, testified that on the afternoon of 7 June 1978 two men came to her house and assaulted her with a knife and robbed her of cash, a Belk's credit card, social security card, bus card and tickets. She could not identify the men because she was losing her sight.

Debra Cureton testified that she was walking down the sidewalk and saw two men come from the back of a house. The two men joined her and one talked to her, and she described him as wearing white pants, black shirt, hat and sunglasses with initials. She later saw the two men run from the back of the same house, and she stated that she could identify defendant as the man she talked to, but could not identify the second man except that she observed that he was wearing blue jeans. Ms. Cureton waited for the police at Vera Yandle's house and gave them her description of the two men. About 45 minutes later Ms. Cureton viewed defendant at the police station and she identified him after he put on his hat and sunglasses.

Officer Caudill testified that he was on patrol on the afternoon of 7 June 1978 and received a radio broadcast of a robbery. Two suspects, black males, one with a light colored hat, white pants, black shirt and sunglasses, and one wearing blue jeans, were described by the broadcast. He observed two black males and stopped one, and later the second, defendant, who at first failed to stop. When asked for identification defendant said he had none, but then, according to the officer, defendant pulled out a credit card and some bus tickets which he told the officer that he had just found. The credit card was issued to Vera Yandle. Defendant was wearing light tan pants, brown shirt, a hat and sunglasses with initials.

Officer Dixon testified that he had gone to the Yandle house, obtained the description from Debra Cureton and relayed it to the police dispatcher.

The trial court concluded that: (1) the victim could not identify her assailant because of her failing eyesight; (2) the in-court identification of defendant by the witness Cureton was based entirely upon an impermissibly suggestive show-up procedure at which defendant was denied his right to counsel; (3) that defendant and his companion were stopped illegally on the street; and (4) that there was no probable cause for their arrest. Defendant's motion to suppress was granted and the State appeals.

*Attorney General Edmisten, by Assistant Attorney General Joan H. Byers, for the State.*

*Theo H. Nixon for defendant appellee.*

ARNOLD, Judge.

[1] First the State argues that defendant was not entitled to counsel at the show-up. The State errs in arguing that G.S. 7A-451(b)(2) controls. That statute sets out the entitlement of indigent persons to the services of counsel; the issue here is not whether defendant was entitled to have counsel *appointed* at State expense, but whether he was entitled to have counsel *present* at the show-up. The State is correct, however, that defendant was not entitled to counsel at this identification. Defendant was arrested and taken to the police station. There he was shown to the witness, who identified him. He was subsequently taken before a magistrate and formally charged. On an identical sequence of occurrences this Court has held that a defendant is not entitled to counsel at the show-up, since "[t]he constitutional right to counsel at an identification procedure does not attach until 'the initiation of adversary *judicial* criminal proceedings . . . by way of formal charge, preliminary hearing, indictment or arraignment.'" *State v. Sanders*, 33 N.C. App. 284, 287, 235 S.E. 2d 94, 96, *cert. denied* 293 N.C. 257 (1977).

[2] Nevertheless, the order suppressing the identification evidence must be affirmed. His Honor found that the victim could not identify her assailant, that the show-up procedure was impermissibly suggestive, and that Ms. Cureton's in-court identification was based entirely on the show-up. Inasmuch as the findings of fact were based on competent evidence this Court is bound by the trial court's findings. 4 Strong's N.C. Index 3d, Criminal Law, § 66.20 at 276.

[3] The record reveals that the police officers who made the stop received a radio broadcast reporting an armed robbery in the area they were patrolling. A description was given of two suspects who were young black males with a knife, one of whom was wearing a light-colored hat, white pants, black shirt and sunglasses. A short distance from the scene the officers attempted to stop defendant and his companion, two black males who generally fit the description given over the police radio.

According to the officer's uncontroverted testimony at the hearing, defendant's companion had under his shirt what appeared to the officers to be a knife. (It turned out to be a stick.) Defendant's companion was stopped for questioning, and the of-

ficers attempted to stop defendant, who kept going, but later was stopped. Defendant had on light tan pants, a brown shirt and sunglasses.

The court's finding that "there is no evidence that the man fit [the] description" simply is not supported by the evidence in this record, and thus is not binding on this Court. *Yarborough v. State*, 6 N.C. App. 663, 171 S.E. 2d 65 (1969). Moreover, this deficient finding by the trial court appears to be the basis for its conclusion that the stop was illegal. The remaining findings likewise do not support the conclusion that the stop was illegal. Indeed, from this record we find no evidence from which such a finding could be made.

In view of the description relayed over the police radio and the proximity of distance and time to the crime, there existed reasonable grounds for the officers to lawfully confront defendant and his companion for questioning. Based on the holding of our Supreme Court in *State v. Streeter*, 283 N.C. 203, 195 S.E. 2d 502 (1973), we have no difficulty in finding the stop in this case to be legal. The trial court's conclusion that the stop was illegal is therefore reversed.

Finally, that portion of the order which suppresses evidence of the credit card, bus pass and bus tickets found on defendant's person is vacated. We also vacate the court's conclusion that there was no probable cause to arrest defendant.

Uncontroverted testimony by the officer who arrested defendant indicated that defendant at first stated that he had no identification on him, but then pulled out a credit card and upon request showed the card to the officers. It was the Belk's charge card issued to Mrs. Yandle. The trial court's finding that the "Court does not believe this testimony" leaves the record bare of evidence which explains how the officers came into possession of the Belk's card and other articles, and there is no evidence to support the ruling that there was no probable cause for defendant's arrest.

That part of the Superior Court's order concluding that the stopping of defendant by the police was illegal is reversed; that part of the order suppressing the identification evidence is affirmed; and that part of the order suppressing evidence of the

Belk's card and other articles found on defendant, and finding no probable cause for arrest, is vacated. The case is remanded for trial.

Remanded.

Judges PARKER and WEBB concur.