STATE OF NORTH CAROLINA v. MICHAEL BARXLEY GREENWOOD

No. 7918SC1032

(Filed 5 August 1980)

1. **Searches and Seizures § 12– defendant sitting in automobile – investigatory stop or seizure**

In a prosecution for possession of marijuana, felonious breaking and entering a motor vehicle, and larceny of a pocketbook, there was no merit to defendant's contention that his initial detention by a police officer as he sat in his car in a church parking lot constituted a "forcible stop" or "seizure" of his person which violated his reasonable expectation of privacy, since the evidence tended to show that the officer received a call between 7:00 and 8:00 p.m. requesting him to investigate a "suspicious person" on the church premises; as he arrived he was directed by churchgoers toward defendant who was alone in an automobile parked in the corner of the lot; and the totality of the circumstances afforded the officer the basis of authority to approach defendant's automobile and direct defendant to roll down his window for the limited purpose of investigating a report that a suspicious person was on the premises.

2. **Searches and Seizures § 11– marijuana odor in automobile – warrantless search of vehicle – probable cause**

An officer's warrantless search of defendant's automobile was based on probable cause and was therefore proper where the officer, trained in the identification of marijuana by its odor, detected the distinct odor of marijuana emanating from defendant's automobile, and it was reasonable for the officer to assume that the odor originated from defendant's vehicle and that the vehicle contained marijuana.

3. **Arrest and Bail § 3.4– possession of controlled substance – warrantless arrest – probable cause**

Where an officer conducted a proper warrantless search of defendant's vehicle and found cigarette butts and a "roach clip" which apparently contained marijuana, the officer had probable cause to believe that defendant had committed the offense of possession of a controlled substance, and his warrantless arrest was therefore lawful.

4. **Searches and Seizures § 37– pocketbook on rear seat of car – warrantless search incident to arrest for marijuana possession**

Search of a pocketbook found on the rear seat of defendant's automobile subsequent to defendant's warrantless arrest for possession of marijuana was improper, since the pocketbook was obviously a repository for personal items, and a warrantless search thereof was in violation of the Fourth Amendment prohibition against unreasonable searches and seizures.

APPEAL by defendant from denial of Motion to Suppress entered by *Crissman, Judge,* on 14 December 1978. Judgment entered by *Davis, Judge,* on 8 June 1979 in Superior Court, GUILFORD County. Heard in the Court of Appeals 24 March 1980.

Defendant was charged under G.S. 90-95(a)(3) with the misdemeanor possession of marijuana and under G.S. 14-56 and G.S. 14-72 with felonious breaking and entering a motor vehicle and with larceny and receiving of a pocketbook. Defendant moved for the suppression of the marijuana and pocketbook.

At the suppression hearing, the State presented evidence which tended to show the following: On 27 November 1977, at approximately 8:00 p.m., Officer M. L. Simpson of the High Point Police Department was called to the Church of God at 209 West Ward Street in High Point to investigate a report that a suspicious person was on the premises. Upon his arrival at the church, Officer Simpson was directed by some people standing nearby toward a particular vehicle parked in the corner of the church parking lot, which Officer Simpson observed as a 1966 blue Ford Mustang. Defendant was sitting in the driver's seat of the vehicle.

Officer Simpson approached the vehicle and directed defendant to roll the window down, and defendant complied. Officer Simpson then asked defendant to present his driver's license. At this time, the officer detected the odor of marijuana in and around the vehicle. Officer Simpson asked defendant to get out of the vehicle and, after defendant did so, the officer advised defendant of his *Miranda* rights. Officer Simpson then told defendant that he was going to search the vehicle for marijuana. The officer collected several fragments of cigarette butts which were later determined to contain marijuana. Officer Simpson also discovered a "roach clip" with some marijuana

residue on it. Defendant was then placed under arrest for possession of marijuana. Officer Simpson advised defendant that, according to departmental rules and regulations, his duty was to store and inventory defendant's vehicle. Officer Simpson proceeded to inventory the vehicle. On the rear seat of defendant's vehicle the officer found a light brown pocketbook under some jackets. The pocketbook was searched and the contents inventoried, which revealed that the pocketbook did not belong to defendant. Defendant was then charged with breaking and entering a motor vehicle and with larceny and receiving. Defendant's vehicle was subsequently removed by a wrecker and stored.

At the conclusion of the suppression hearing, the court denied defendant's motion, concluding that under G.S. 20-29 the officer had the right, under the circumstances, to request that defendant present his driver's license; that, pursuant to his duty, the officer had the right to search defendant's vehicle for marijuana without a search warrant; and that the officer "had the right to impound the car to keep it from getting away." Defendant thereafter pleaded no contest to the charges of misdemeanor possession of marijuana and misdemeanor breaking and entering. Pursuant to this plea arrangement, defendant was given a suspended prison sentence of not less than eighteen nor more than twenty-four months, placed on unsupervised probation for a period of two years, and ordered to pay fines and costs in each case. Execution of the sentence was stayed pending this appeal by defendant of the denial of his motion to suppress.

*Attorney General Edmisten, by Associate Attorney William R. Shenton, for the State.*

*Assistant Public Defender Robert L. McClellan for the defendant appellant.*

MORRIS, Chief Judge.

Defendant's various assignments of error are presented in his brief under the general contention that the trial court erred by failing to grant defendant's pretrial motion to suppress. We

consider defendant's appeal by examining his arguments with respect to the various aspects of the police officer's conduct on this occasion, from the initial contact with defendant through the subsequent arrests.

Defendant argues that his initial detention by Officer Simpson in the church parking lot constituted a "forcible stop" or "seizure" of his person, and that under the circumstances the officer had no authority to intrude upon his "reasonable expectation of privacy" as he sat in his automobile with the windows rolled up.

With respect to defendant's claim of an expectation of privacy, our United States Supreme Court recently stated that an individual operating an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. *Delaware v. Prouse*, 440 U.S. 648, 59 L.Ed. 2d 660, 99 S.Ct. 1391 (1979). Indeed, just as people do not waive their Fourth Amendment protections against unreasonable searches and seizures when they step from their homes onto public sidewalks, *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed. 2d 889, 88 S.Ct. 1868 (1968), neither do they lose those protections when they step from the sidewalks into their automobiles. *Adams v. Williams*, 407 U.S. 143, 32 L.Ed. 2d 612, 92 S.Ct. 1921 (1972). *See also Katz v. United States,* 389 U.S. 347, 19 L.Ed. 2d 576, 88 S.Ct. 507 (1967). Even assuming in the case before us that defendant enjoyed a reasonable expectation of privacy while in his automobile parked in the church parking lot, we are of the opinion that the police officer acted properly when he approached defendant in his vehicle for the purposes of a limited investigation.

In *Delaware v. Prouse, supra,* the Court stated that "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. Implemented in this manner, the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against 'an objective standard', whether this be probable cause or a less stringent test." 440 U.S. at 654, 59 L.Ed. 2d at

667-68, 99 S.Ct. at 1396. Both the United States Supreme Court and our own North Carolina Supreme Court have recognized the limited right of police officers, in appropriate circumstances, to approach an individual for purposes of investigating "possible criminal behavior", even though there is no probable cause to make an arrest. *Terry v. Ohio, supra; State v. Streeter,* 283 N.C. 203, 195 S.E. 2d 502 (1973). The "stop and frisk" rule, as applied in North Carolina is explained in *State v. Streeter, supra,* as follows:

> [I]f the totality of circumstances affords an officer reasonable grounds to believe that criminal activity may be afoot, he may temporarily detain the suspect. If, after the detention, his personal observations confirm his apprehension that criminal activity may be afoot and indicate that the person may be armed, he may then frisk him as a matter of self-protection. [Citations omitted.]

283 N.C. at 210, 195 S.E. 2d at 507. (In this case, we are only concerned with the "stop" element of this rule, that is, the "forcible stop" or "seizure" of defendant's person while he sat in his automobile.) This rule has been extended to persons travelling in automobiles, *Adams v. Williams, supra,* where there is "at least articulable and reasonable" suspicion that a motorist or his vehicle is somehow subject to seizure for violation of law. *Delaware v. Prouse, supra.* This right to conduct an investigatory stop or seizure of an individual has been approved in many decisions since *State v. Streeter, supra,* on different facts. *E.g., State v. Buie,* 297 N.C. 159, 254 S.E. 2d 26, *cert. denied,* 444 U.S. 971, 62 L.Ed. 2d 386, 100 S.Ct. 464 (1979); *State v. Thompson,* 296 N.C. 703, 252 S.E. 2d 776, *cert. denied,* 444 U.S. 907, 62 L.Ed. 2d 143, 100 S.Ct. 220 (1979); *State v. McZorn,* 288 N.C. 417, 219 S.E. 2d 201 (1975), *death sentence· vacated,* 428 U.S. 904, 49 L.Ed. 2d 1210, 96 S.Ct. 3210 (1976); *State v. Sadler,* 40 N.C. App. 22, 251 S.E. 2d 902, *cert. denied and appeal dismissed,* 297 N.C. 303, 254 S.E. 2d 924 (1979); *State v. Stanfield,* 19 N.C. App. 622, 199 S.E. 2d 741 (1973), *appeal dismissed,* 284 N.C. 622, 201 S.E. 2d 692 (1974). *See also Gaines v. Craven,* 448 F. 2d 1236 (9th Cir. 1971) and *United States v. Unverzagt,* 424 F. 2d 396 (8th Cir. 1970) (where it was held that police officers acted properly by conducting an investigatory

stop of a "suspicious individual" under circumstances in which the officers had a reasonable belief that further investigation was necessary to test information which had been given to them.) This standard was refined in the recent decision of *State v. Thompson, supra,* where the Court applied both *Terry v. Ohio, supra,* and *Adams v. Williams, supra.* The Court stated:

> The standard set forth in *Terry* for testing the conduct of law enforcement officers in effecting a warrantless "seizure" of an individual is that "the police officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed. 2d at 906. In *Adams v. Williams,* 407 U.S. 143, 146, 92 S. Ct. 1921, 1923, 32 L.Ed. 2d 612, 617 (1972), the Court reaffirmed the principle of *Terry* that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." The standard set forth in *Terry* and reaffirmed in *Adams* clearly falls short of the traditional notion of probable cause, which is required for an arrest. We believe the standard set forth requires only that the officer have a "reasonable" or "founded" suspicion as justification for a limited investigative seizure. *United States v. Constantine,* 567 F. 2d 266 (4th Cir. 1977); *United States v. Solomon,* 528 F. 2d 88 (9th Cir. 1975).

296 N.C. at 706, 252 S.E. 2d at 779.

[1] Under the facts before us, it is our view that the "totality of the circumstances" afforded Officer Simpson the basis of authority to approach defendant's automobile parked in the parking lot of a church and direct defendant to roll down his window for the limited purpose of investigating a report that a "suspicious person" was on the premises. The evidence on voir dire shows that the officer received a call between 7:00 p.m. and 8:00 p.m. on 27 November 1977 requesting him to investigate a "suspicious person" on the church premises. As he arrived, he was directed by churchgoers toward defendant, who was alone in an automobile parked in the corner of the lot.

State v. Greenwood

We find these facts controlled by the recent decision of *State v. Thompson, supra.* There, police officers approached and detained defendants, who occupied a van parked in a public parking area in the early morning. Evidence showed that the officers were aware that criminal activity in the area involving a van had been recently reported. The Court, in upholding convictions based on evidence seized from the van, concluded that the facts and inferences drawn therefrom justified a reasonable suspicion that the occupants of the van might be engaged in or connected with criminal activity. The Court, therefore, found that the officers acted properly in approaching the van and seeking identification from its occupants.

Such conduct is similarly appropriate in the instant case. It appears that, based on the totality of circumstances as they were perceived through the eyes of Officer Simpson; the officer was justified in his belief that further investigation of defendant was necessary to test out the report previously given him. *See Gaines v. Craven, supra; United States v. Unverzagt, supra.*

In so holding, we reject as inapplicable defendant's argument that any authority given to police officers to detain motorists under G.S. 20-29 has been overruled by our United States Supreme Court in *Delaware v. Prouse, supra,* wherein the Court stated:

> [W]e hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and registration of the automobile are unreasonable under the Fourth Amendment.

440 U.S. at 663, 59 L.Ed. 2d at 673, 99 S.Ct. at 1401. Rather, under the decisions of *Terry v. Ohio, supra, Adams v. Williams, supra, State v. Thompson, supra,* and *State v. Streeter, supra,* we find from these facts a sufficient basis upon which Officer Simpson's investigatory stop of defendant's person was appropriate, independently of the officer's authority pursuant to G.S. 20-29 to

State v. Greenwood

detain motorists for the purposes of inspection on the public streets. This result is, furthermore, entirely consistent with the standard of "articulable and reasonable suspicion" announced in *Delaware v. Prouse, supra.*

**[2]** We next consider whether the search of defendant's automobile was proper. The State argues that the search was proper in that the officer, upon detecting the odor of marijuana in and around defendant's car at the time defendant rolled down his window, had probable cause to believe that a controlled substance was contained within defendant's automobile. Defendant argues, on the other hand, that the alleged odor of marijuana, standing alone, did not provide probable cause to search defendant's vehicle for the presence of a controlled substance, absent a search warrant.

Whether the odor of an illegal substance alone provides a sufficient basis to justify the warrantless search for such substances has been an issue of considerable debate. There appears to be a split of authority among the jurisdictions which have decided this question. *Compare, e.g., Johnson v. United States,* 333 U.S. 10, 92 L.Ed. 436, 68 S.Ct. 367 (1948); *State v. Schoendaller,* 578 P. 2d 730 (S.Ct. Mont. 1978); and *People v. Hilber,* 403 Mich. 312, 269 N.W. 2d 159 (1978) *with United States v. Martinez-Miramontes,* 494 F. 2d 808 (9th Cir.), *cert. denied,* 419 U.S. 897, 42 L.Ed. 2d 141, 95 S.Ct. 176 (1974), and *United States v. Barron,* 472 F. 2d 1215 (9th Cir.) *cert. denied,* 413 U.S. 920, 37 L.Ed. 2d 1041, 93 S.Ct. 3063 (1973). In *United States v. Mullin,* 329 F. 2d 295 (4th Cir. 1964), defendants were convicted of possessing nontaxpaid whiskey. On appeal, the Court of Appeals for the Fourth Circuit reversed, holding that there was not probable cause to justify warrantless search:

> Odors associated with contraband that lead a reasonable man to believe that a crime has been committed have been recognized as a valid basis on which to seek a search warrant. [Citations omitted.] The Supreme Court has recently reaffirmed the principle, however, that such observations, while furnishing probable cause for the issuance of a warrant, will not suffice to justify a search and seizure without a warrant. [Citation omitted.]

329 F. 2d at 297. The *Mullin* Court relied heavily on *Johnson v. Unites States, supra,* where the Supreme Court explained the rationale behind its distinction between evidence sufficient for a search warrant as opposed to probable cause to justify a warrantless search:

> The point of the Fourth Amendment which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.

333 U.S. at 13-14, 92 L.Ed. at 440, 68 S.Ct. at 369.

This zealous regard for review by a disinterested judicial official has been carried over into the modern era where state police officers and federal officials are engaged in the same "competitive enterprise", only with different types of contraband. In *People v. Hilber, supra,* cited by defendant, defendant was stopped for speeding by a Michigan State trooper, and was requested to present his driver's license and registration. A subsequent search of defendant's vehicle revealed a substantial quantity of marijuana. At a suppression hearing, the Circuit Court found that the trooper's detection of the odor of marijuana justified the search of the automobile. The Court of Appeals disagreed with this finding and reversed defendant's conviction. On appeal to the Supreme Court, the State argued that the odor of burned marijuana provided reasonable cause to believe that defendant had smoked the marijuana that caused the odor and that there was unsmoked marijuana in the automobile. The Court distinguished between marijuana that was unburned, burning, and burned, and the possible inferences to be drawn therefrom and compared the habit of smoking mari-

juana to that of smoking cigarettes. After criticizing the "indefinite and indeterminate" terminology used by the trooper to describe his suspicions about defendant, the Court concluded that even if it was reasonable to believe that a marijuana smoker would have in his possession or in his automobile a supply of unsmoked marijuana, it was unreasonable in this case to conclude that defendant was the smoker, and, therefore, that the trooper was not justified in searching defendant's vehicle. Similarly, in *State v. Schoendaller, supra,* police officers approached defendant in his automobile while defendant was stopped in the street blocking traffic. While standing beside the open driver's window of defendant's automobile, one officer detected the odor of marijuana and incense. Based on this detection, the officers searched defendant's vehicle and found contraband substances, including marijuana. The Montana Supreme Court ruled the search invalid, concluding as follows:

> The police conducted their warrantless search on the basis of "... a strong odor of marijuana in the car along with that of some incense or something ..." and lacking an exigent circumstances, such perception falls closer to the realm of bare suspicion than probable cause. We do not deny police officers the right to rely on these [sic] sense of smell to confirm their observations. However, to hold that an odor alone, absent evidence of visible contents, is deemed equivalent to plain view might very easily mislead officers into fruitless invasions of privacy where there is no contraband.

578 P. 2d at 734. *Accord: State v. Olson,* 589 P. 2d 663 (S.Ct. Mont. 1979). In both *Hilber* and *Schoendaller* there were strong dissents which supported the view that the odor of marijuana is in itself enough to provide probable cause to search.

Recent decisions from jurisdictions other than North Carolina have held generally that the detection of odor of marijuana emanating from a automobile constitutes probable cause to search the vehicle for the presence of marijuana. *E.g., State v. Zamora,* 114 Ariz. 75, 559 P. 2d 195 (1977); *United States v. Solomon,* 528 F. 2d 88 (9th Cir. 1975); *United States v. Barron, supra; United States v. Garcia-Rodriguez,* 558 F. 2d 956 (9th Cir. 1977),

State v. Greenwood

*cert. denied,* 434 U.S. 1050, 54 L.Ed. 2d 802, 98 S.Ct. 900 (1978); *United States v. Stricklin,* 534 F. 2d 1386 (10th Cir.), *cert. denied,* 429 U.S. 831, 50 L.Ed. 2d 95, 97 S.Ct. 92 (1976); *United States v. Fontecha,* 576 F. 2d 601 (5th Cir. 1978); *Rose v. City of Enterprise,* 52 Ala. App. 437, 293 So. 2d 862 (1974); *State v. Harrison,* 111 Ariz. 508, 533 P. 2d 1143 (1975); *State v. Ballesteros,* 23 Ariz. App. 211, 531 P. 2d 1149 (1975), *cert. denied,* 423 U.S. 870, 46 L.Ed. 2d 100, 96 S.Ct. 135 (1975); *People v. Gale,* 108 Cal. Rptr. 852, 511 P. 2d 1204 (1973); *Mattson v. State,* 328 So. 2d 246 (Fla. App. 196); *People v. Gremp,* 20 Ill. App. 3d 78, 312 N.E. 2d 716 (1974); *State v. Gilson,* 116 N.H. 230, 356 A. 2d 689 (1976); *State v. Binns,* 194 N.W. 2d 756 (N.D. 1972); *State v. Childers,* 13 Or. App. 622, 511 Pa. 2d 447 (1973). In most, if not all, of these decisions, probable cause to search was grounded on the expertise and sound judgment of the investigating officer in assessing the probability that the odor detected is that of a contraband substance and that it is reasonable to assume that a search of a vehicle will reveal the substance. We find these decisions persuasive and believe that they represent a suitable resolution to the issue presented here.

Applying the rationale underlying these decisions, we conclude that the search by Officer Simpson of defendant's automobile was, although without a warrant, based on probable cause and, therefore, proper. The law is settled in North Carolina that a law enforcement officer may conduct a warrantless search of an automobile if the officer has a reasonable belief that the automobile contains contraband materials. *State v. Jefferies* and *State v. Person,* 41 N.C. App. 95, 254 S.E. 2d 550, *cert. denied,* 297 N.C. 614, 257 S.E. 2d 438 (1979); *State v. Bunn,* 36 N.C. App. 114, 243 S.E. 2d 189, *cert. denied,* 295 N.C. 261, 245 S.E. 2d 778 (1978); *State v. Walker,* 25 N.C. App. 157, 212 S.E. 2d 528, *cert. denied,* 287 N.C. 264, 214 S.E. 2d 436, *cert. denied,* 423 U.S. 894, 46 L.Ed. 2d 126, 96 S. Ct. 193 (1975), and cases there cited. Such probable cause to search is established where, from the surrounding circumstances, there exists at least a "probability" that contraband substances are contained within the vehicle. *Cf., State v. McLeod,* 36 N.C. App. 469, 244 S.E. 2d 716, *cert. denied,* 295 N.C. 555, 248 S.E. 2d 733 (1978). Here, the officer, trained in the identification of marijuana by its odor, detected the distinct odor of marijuana emanating from defendant's

automobile. In our view, it was reasonable for the officer to assume that the odor originated from defendant's vehicle and that the vehicle contained marijuana. Further, the subtle distinctions created by other courts concerning the possible inferences to be drawn from unburned, burning, and burned marijuana are not, we believe, based on the best logic and, in addition, are not dispositive in any particular case. *See People v. Hilber, supra* (Williams, Justice, dissenting). In addition, we find sufficient exigencies in this case to justify the officer's failure to procure a search warrant before searching defendant's vehicle, in that, had Officer Simpson left defendant to get a warrant, it is highly unlikely that defendant would have been in the parking lot when he returned. In concluding that the search of defendant's automobile was based upon probable cause and conducted under exigent circumstances, we reiterate the words of Justice Huskins in *State v. Riddick*, 291 N.C. 399, 406, 230 S.E. 2d 506, 511 (1976), that "probable cause means a reasonable ground to believe that the proposed search will reveal the presence, upon the premises to be searched, of the objects sought and that those objects will aid in the apprehension or conviction of the offender." We believe those criteria have been met in this case.

[3] Defendant next argues that his arrest on the charge of possession of a controlled substance was unlawful. We disagree. Pursuant to his proper search of defendant's vehicle, the officer found cigarette butts and a "roach clip" which apparently contained marijuana. The officer then had probable cause to believe that defendant had committed the offense of possession of a controlled substance. G.S. 90-95(a)(3). Defendant's arrest was, therefore, proper under G.S. 15A-401(b)(2), in that the circumstances led the officer to believe that defendant had "committed a misdemeanor" and would "not be apprehended unless immediately arrested." Defendant's contention that under G.S. 90-95(d)(4) he was guilty at most of a misdemeanor and subject only to a fine of not more than $100, and that his arrest was an unlawful deprivation of liberty is, therefore, without merit.

[4] Defendant's remaining contentions relate to the suppression of a pocketbook found on the rear seat of defendant's automobile. We are of the opinion that, even if the further search

State v. Greenwood

after defendant's arrest for possession of marijuana was proper, evidence concerning the pocketbook obtained by a search of its contents should have been suppressed.

Controlling in this instance is our recent decision of *State v. Cole*, 46 N.C. App. 592, 265 S.E. 2d 507 (1980). In *Cole*, the Court held that the warrantless search of a jacket found on the rear seat of defendant's automobile was in violation of the Fourth Amendment prohibition against unreasonable searches and seizures under the rules established initially in *United States v. Chadwick*, 433 U.S. 1, 53 L.Ed. 2d 538, 97 S.Ct. 2476 (1977), and followed in the recent case of *Arkansas v. Sanders, supra*. The Court characterized defendant's jacket as a "repository for personal items when one wishes to transport them", citing *United States v. Meier*, 602 F. 2d 253, 255 (10th Cir. 1979) and *Arkansas v. Sanders, supra.* We adhere to these principles in the present case involving a pocketbook, which is obviously a repository for personal items, and hold that a warrantless search of the pocketbook was improper. This result obtains regardless of whether the pocketbook was seized from defendant's automobile. *See Arkansas v. Sanders, supra.*

The trial court's order denying defendant's motion to suppress with respect to the controlled substance, is affirmed.

The trial court's order denying defendant's motion to suppress, with respect to the contents of the pocketbook, is reversed.

Affirmed in part; reversed in part.

Judges PARKER and WELLS concur.